BEVERLY ROSS, PLAINTIFF, v.
DAVID J. ROSS, DEFENDANT.

Juvenile and Domestic Relations Court — Essex County

Decided December 5, 1973.

*Mr. Sanford Gudger* for plaintiff (*Mr. Robert Doris,* of the Essex County Legal Services, attorney).

*Mr. Melvin Randall* for defendant (*Mr. John C. Love,* attorney).

BELLFATTO, P. J., J. & D. R. C. The question presented in this case is whether a mother and her husband are estopped to deny their previous admissions of paternity of the prenuptial child.

The facts, succinctly stated, involve a child of plaintiff-mother born to her about 18 months prior to her marriage to defendant-husband. There is testimony by plaintiff that the parties engaged .in prenuptial sex relations (denied by de-

fendant) as of the time of conception. After the marriage the parties lived together with the child for about four years. There is nothing in the record to indicate that the relationship between the parties during their married life with the child was anything but harmonious. During the course of the marital relationship defendant-husband filed a certificate of admission of paternity with the Bureau of Vital Statistics at Trenton, pursuant to *N. J. S. A.* 26:8–40, indicating thereon the names of the married couple as the parents of the child. The child entered school at the time plaintiff and defendant lived together. As stated by the mother, the school records of the child indicate that the parties to this action are the parents of the child. The parties became separated and the child remained with the mother. Thereafter, on September 11, 1972 the mother filed a sworn complaint against her husband seeking support for the child and herself and indicating in her affidavit that he was the father of the child. At the hearing in the Domestic Relations Court an order of support for the child and the mother was entered. Neither of the parties at that time disclaimed paternity.

At a subsequent hearing on June 15, 1973 the mother for the first time informed the Court that the child was not that of her husband, and he so indicated. The order of support was continued to include the wife and child, and the matter was adjourned for the filing of briefs by counsel. Defendant-husband has substantially met the order of support. Plaintiff-mother was advised to obtain counsel, which she did.

On the return date of the argument, December 5, 1973, the court interviewed the child, then almost seven years of age, in chambers. After questioning the child as to his residence and school the following questions and answers took place: Q. "Who is your daddy?" This brought a quick response. A. "He's outside." (Defendant was then sitting in the courtroom adjacent to the judge's chambers).

Q. Where is your daddy today? A. He's outside.
Q. Do you love your daddy? A. Yes.
Q. Do you get Christmas presents from your daddy? A. Yes.

Q. Did you get one last year? A. Yes.

Q. What did you get? A. A television [and] he gave me a radio — its yellow, but it's broke.

Q. Who will fix it for you? A. My daddy.

Q. Would you like to see your mother and daddy together again? A. Yes.

The child appeared to be as a bright and intelligent youngster and the court is convinced that the child recognizes defendant-husband as his father.

Thereafter, and during the course of argument, counsel for plaintiff-mother indicated that prior to the case being called for a hearing, and in the corridor adjacent to the court, he observed the child running to the arms of defendant-husband as a child would do in greeting a father. This comment by counsel was neither objected to by counsel for defendant-husband nor denied by defendant.

Despite his prior contradictory behavior, defendant now contends that he is not the child's father and should therefore be absolved from support obligations. He maintains that requiring support when nonpaternity is admitted by both parties is contrary to *N. J. S. A.* 9:16–1 *et seq.* Relying on *B. v. O.,* 50 *N. J.* 93 (1967), he claims that only the natural father can be saddled with that responsibility; the fact that he held himself out as the father under *N. J. S. A.* 26:8–40 should not estop his later denial of parenthood. He cites *Jackson v. Prudential Ins. Co.,* 106 *N. J. Super.* 61 (Law Div. 1969).

It is undeniable that in New Jersey a determination of paternity is a prerequisite to the entry of a support order against the natural father. Although *N. J. S. A.* 9:16–1 to 9:16–4 does not specify this requirement, case law has firmly established this interpretation. *Borawick v. Barba,* 7 *N. J.* 393 (1951); *Porter v. Wainwright,* 104 *N. J. L.* 51 (Sup. Ct. 1927); *Hall v. Centolanza,* 28 *N. J. Super.* 391 (App. Div. 1953); *State v. Napoleon,* 37 *N. J. Super.* 595 (Law Div. 1955). There is nothing in New Jersey law, however, that would preclude entry of a support order against some-

one who earlier had claimed paternity. Defendant's reliance on *B. v. O., supra,* for the proposition that the duty of support accrues exclusively to the natural father is clearly misplaced. In that case our Supreme Court held that a married woman had standing to institute a support action against her paramour without violating the Pennsylvania presumption that children born in wedlock are legitimate. By stipulation of the parties, however, Pennsylvania substantive law controlled that case. New Jersey cases were cited merely gratuitously, by way of example. *B. v. O., supra,* is therefore inapplicable to the case at bar.

The duty of the natural father to support his illegitimate child is uncontroverted. See *N. J. S. A.* 9:16-2 (1953). Based on the principle of equitable estoppel, this responsibility may also be imposed upon one who acts *in loco parentis* to the child.

Equitable estoppel precludes a party from repudiating "acts done or positions taken or assumed by him when there has been reliance thereon and prejudice would result to the other party." *Goodpasture v. Goodpasture,* 115 *N. J. Super.* 189, 197 (Ch. Div. 1971). "An estoppel arises 'where a man is concluded and forbidden by law to speak against his own act or deed; * * * even though it is to say the truth.'" *Summer Cottagers' Ass'n v. Cape May,* 19 *N. J.* 493, 504 (1955). This principle prevents a party from adopting contrary factual postions between the original and later hearings. See *Vogel v. Red Star Express Lines,* 73 *N. J. Super.* 534 (App. Div. 1962), aff'd *per curiam,* 40 *N. J.* 44 (1963). Even prior inconsistent admissions by a party may trigger the application of equitable estoppel. *Koppel v. Olaf Realty Corp.,* 56 *N. J. Super.* 109, 121 (Ch. Div. 1959), aff'd 62 *N. J. Super.* 103 (App. Div. 1960). Furthermore, fraudulent conduct by a party necessarily precludes his benefiting from his own misbehavior.

The husband has been estopped to deny paternity when he represents to the child that he is the actual father, and the child, in reliance thereon, is prejudiced. *Clark, Law of Do-*

*mestic Relations* 176–177 (1968). *Clevenger v. Clevenger,* 189 *Cal. App.* 2d 658, 11 *Cal. Rptr.* 707 (Ct. App. 1961). See also, *Wener v. Wener,* 35 App. Div. 2d 50, 312 *N. Y. S.* 2d 815 (App. Div. 1972); *Gursky v. Gursky,* 39 *Misc.* 2d 1083, 242 *N. Y. S.* 2d 406 (Sup. Ct. 1963); *cf. Swain v. Swain,* 250 *Cal. App.* 2d 1, 58 *Cal. Rptr.* 83 (Ct. App. 1967); *Jackson v. Jackson,* 278 *A.* 2d 114 (D. C. Ct. App. 1971); *Fuller v. Fuller,* 247 *A.* 2d 767 (D. C. Ct. App. 1968); *Sargeant v. Sargeant,* 495 *P.* 2d 618 (Nev. Sup. Ct. 1972).

In *Clevenger, supra,* the court held that the husband had no duty to support an illegitimate prenuptial child after a divorce action, even though he accepted the child into the family for a period of years while living with the mother-wife. However, the court remanded the case for further proceedings as it was of the opinion that there could be an equitable estoppel if it were established on remand that (1) the husband made a direct or implied representation to the child as his natural father (the record in that case apparently is void of any knowledge on the part of the infant that the husband was his natural father), (2) the child relied upon the representation and treated the husband as his father and gave him his love and affection, and (3) the child was ignorant of the facts.

It has been held that a wife has been similarly estopped from asserting the illegitimacy of her child. In *Gossett v. Ullendorff,* 114 Fla. 159, 154 *So.* 177 (Fla. Sup. Ct. 1934), a wife was estopped to deny the legitimacy of her children so as to obtain a greater inheritance in her husband's estate. Adopting a similar position, *In re Smith's Estate,* 136 *Misc.* 863, 242 *N. Y. S.* 464 (Cty. Ct. 1930), held that the wife who had held herself out to the children and the community as the lawful parent was equitably estopped to change her position to their detriment.

In this State the equitable estoppel theory has been considered in *Jackson v. Prudential Life Ins. Co., supra,* and *Bartholdi v. Dumbeky,* 37 *N. J. Super.* 418 (App. Div. 1955). *Jackson* merely raised, but never resolved, the es-

toppel question. Since the issue was clearly left open, it is totally devoid of precedential value. In *Bartholdi* the husband, who had acknowledged his wife's illegitimate child in a prior proceeding, was barred from thereafter questioning the status of the child. There was no dispute regarding the husband's paternity; the child was obviously illegitimate. Since the husband was bound by his prior judicial admission, he could not subsequently relitigate the child's status.

Applying the reasoning of the above cases, it is evident that both parents should be estopped from now denying the husband's paternity. The child, the real party in interest for whose benefit the support action was brought, will otherwise be irretrievably injured.

[B]astardizing the child * * * may permanently wound him emotionally * * * Every child has the need to feel rooted * * * When such knowledge is denied the child may resort to fantasy to fill the void. As the links to his past disappear with time, the search for his identity will become more difficult. The anxiety to learn what was in his past may be pathological, making it more difficult for the child to lead a useful life and to form meaningful relationships. [*In re Adoption by K*, 92 N. J. *Super.* 204, 208 (Cty. Ct. 1966)]

The doctrine of equitable estoppel is intended to prevent just such unfair results. See *Drake v. Ming Chi Shek*, 155 *F. Supp.* 345 (D. N. J. 1957), and *Koppel v. Olaf Realty Corp., supra.*

██ Within the entire framework of this case the court comes to the following determination: (1) the child sincerely believes that defendant-husband is his father; (2) defendant-husband did by his conduct represent himself to the child as his father, and (3) the mother and her husband are estopped to deny that they are the parents of this child. To find otherwise would do irreparable harm and inflict deep injury upon the child.

The order of support for mother and child is continued.