139 N.J. Super. 366 (1976)
354 A.2d 100
A.S. PLAINTIFF,
v.
B.S., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 11, 1976.
*367 Mr. Michael P. Mullen, for plaintiff.
*368 Mr. Ira F. Back, for defendant.
Mr. George Warren, guardian ad litem for D.Y.
LOWENGRUB, J.S.C.
This case appears to be one of first impression in this State. A motion was filed by defendant Mr. S, the custodian of a 12-year-old boy, D.Y., otherwise known as D.S., who seeks to be relieved from the obligation to support the child.
D.Y. was born on March 7, 1963 to persons who were then married to each other. During the latter part of that month or in early April 1963 the child was delivered by his parents to the parties hereto who, although living together were not married to each other because Mr. S was under a legal disability to marry. On November 18, 1963 the child's natural parents executed and delivered to the parties hereto a document entitled "Power of Attorney  Consent to Guardian and Consent to Custody." The language of that document purported to grant to "either or both parties hereto exclusive guardianship over the person of D.Y. to serve in said capacity without restriction until said child is 21 years of age." Further, "in consideration of [parties hereto] performing all such acts as we, the natural parents * * * could have performed, we hereby grant the aforesaid exclusive custody, power of attorney and guardianship and forever warrant that it is intended to be irrevocable by us under penalty of damages in a civil proceeding should either of us attempt to withdraw the aforesaid custody, guardianship and power of attorney." The parties to this litigation were married on December 26, 1964 and resided together until January 1972. Subsequent to the filing of a complaint for divorce in this court, Mrs. S filed and obtained a divorce from her husband in Pennsylvania. This court retained jurisdiction over the issues of custody, child support and visitation which were not dealt with in the Pennsylvania proceeding. On December 21, 1973 this court ordered Mr. S to pay to his former *369 wife the sum of $30 a week for the support of the child who resided with her. It is from that order that relief is sought.
Factually, the parties have stipulated that they are neither the natural nor adoptive parents of the child; that the child was born in March 1963 and has been with either or both of them continuously from at least April 1963; that from the time the child was with them he bore their surname; that they read the so-called "power-of-attorney" at the time it was delivered to them; that they were not married to each other when the child was delivered to them; that they married thereafter; that the child was registered in school as D.S. under their surname; that they or either of them were the sole source of support of the child from the date they received him into their home; that the child's natural parents neither contributed to his support nor communicated with nor attempted to communicate with the child from November 1963, and that when the parties first separated the child resided with defendant but subsequently he went to live with plaintiff and continues to reside with her.
The thrust of defendant's application for relief is that since the child no longer resides with him and does not visit with him he no longer is in loco parentis to the child and therefore is not liable for the child's support. A person in loco parentis is "one who means to put himself in the situation of the lawful father with reference to the father's office and duty of making provision for the child." Brinkerhoff v. Merseles' Ex'rs., 24 N.J.L. 680 (Sup. Ct. 1855). See also, 59 Am. Jur.2d, Parent and Child, § 88 at 185 et seq. The essential elements of that status is the intent to assume the parental relationship, which clearly is a question of fact rather than law. Furthermore, the relationship exists only so long as the parties thereto, namely the surrogate parent and/or the child, desire that it exist. In that regard the in loco parentis status differs from natural parenthood or adoption. The latter two permanently affix rights and duties, while the former affixed rights and duties temporary *370 in nature, Schneider v. Schneider, 25 N.J. Misc. 180, 52 A.2d 564 (Ch. 1947); D. v. D., 56 N.J. Super. 357 (App. Div. 1959).
Although arising out of circumstances different from those in the reported New Jersey cases[1] there is no doubt that, under the classic definition of the doctrine, defendant stood in loco parentis to D.Y. from March 1963 until January 1972, the date the parties separated. Defendant asserts that implicit in the obligation for support is the intent to support, and once this intention is renounced the obligation to support falls. See D. v. D., supra; Amadeo v. Amadeo, 64 N.J. Super. 417, 425 (App. Div. 1960), and cases therein cited; 59 Am. Jur.2d, Parent and Child, § 88 at 185 et seq. The cases cited by defendant do support this thesis. While I recognize the authorities cited, I do not feel that they are dispositive of this case. The cases cited may be designated generally as "stepfather" cases wherein the child commenced residing in the home of the stepfather upon the latter's marriage to the child's mother. During the course of that marital relationship the stepfather intended to and did support his wife and her child of a prior marriage. However, upon a dissolution of that familial unit the stepfather's intent to support the child ended. The child then depends solely on its mother, the natural parent, who is obligated to provide for the child. See 11 N.J. Practice (Herr Marriage, Divorce and Separation) (3d ed. Lodge), § 981, at 283, and cases therein cited. After the severance of that marriage the relationship between the child and his or her natural mother is no different from what it was before that marriage.
*371 In the case at bar the child, then a month old, was received by these parties who were neither his natural nor adoptive parents. Since his natural parents have abandoned him, he has known only one father and one mother, these litigants, and bears their surname. Upon the dissolution of their marriage there is no natural or adoptive parent who may be held responsible for the support of the child. Unless the parties to this suit are found to be responsible for the child's support he would be subject to the jurisdiction of this court for placement in a private home or in "a society duly incorporated under the laws of this State for the care of children." N.J.S.A. 9:2-9, 9:2-11.
The application of the doctrine of equitable estoppel must be considered before the conclusion that the obligation of defendant ceases in accordance with the law of in loco parentis.
Equitable estoppel is that principle by which a party who knows or should know the truth is absolutely precluded both by law and in equity, from denying or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion was allowed. [28 Am. Jur.2d, Estoppel and Waiver, § 27, at 627]
Suffice it to say that the child was voluntarily brought by these parties into their home where he was raised and held out by them as their son. Since he knew no other parents he relied on the parties to provide for his needs and treated them as his parents. He is the real party in interest in this proceeding. To permit defendant to repudiate his intent to support the child and no longer stand in loco parentis to him would cause irreparable harm to the boy. He would be without familial roots, without a known heritage. Equitable estoppel must be applied in this instance to prevent that *372 result. See Ross v. Ross, 126 N.J. Super. 394 (J.D.R.C. 1973).
The essential principle of the policy of estoppel here involved is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and good faith has relied upon such conduct." [Summer Cottage Ass'n of Cape May v. City of Cape May, 19 N.J. 493 (1955)].
There need not be a showing of a conscious change of position by the party asserting the estoppel. That element of estoppel is satisfied when a person's position is changed for him to his detriment and prejudice by the acts of the person against whom the estoppel is asserted. 26 Am. Jur.2d, Estoppel and Waiver, § 77 at 713-714.
Suffice it to say that for the first 12 years of his life this child was brought up as the son of the parties hereto. He was not the child of plaintiff who accompanied her when she and defendant married and established a single family unit. The family unit was first established by these parties, who then voluntarily brought the child into their home. It was approximately eight months after they received the child that they were furnished with a writing, which, if nothing else, did evidence the intent of the natural parents that these parties raise the child until emancipation. They accepted that responsibility. The child was prevented from being raised by any other individuals through their action. His heritage was chosen for him by plaintiff and defendant. The obligation they assumed and continued for 12 years cannot now be avoided.
The motion by defendant to be relieved of the obligation to support the child is denied.
NOTES
[1] Green v. Dept. of Institutions & Agencies, 109 N.J. Super. 462 (App. Div. 1970); Tartaglio v. Dept. of Institutions & Agencies, 102 N.J. Super. 592 (App. Div. 1968) cert. den 394 U.S. 1000, 89 S.Ct. 1594, 22 L.Ed.2d 778 (1969); Falzo v. Falzo, 84 N.J. Super. 343 (App. Div. 1964); Amadeo v. Amadeo, 64 N.J. Super. 417 (App. Div. 1960) D. v. D. 56 N.J. Super. 357 (App. Div. 1959), Schneider v. Schneider, 25 N.J. Misc. 180, 52 A.2d 564 (Ch. 1947), Mott v. Iossa, 119 N.J. Eq. 185 (Ch. 1935).