245 N.J. Super. 1 (1990)
583 A.2d 762
RICHARD A. SAVOIE, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
JEAN T. SAVOIE, DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 1990.
Decided November 26, 1990.
*2 Before Judges J.H. COLEMAN, DREIER and ASHBEY.
R. Dale Winget, attorney for appellant, cross-respondent.
Drazin & Warshaw, attorneys for respondent, cross-appellant (Vincent L. Stripto on the letter brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
*3 This is an appeal and cross-appeal from certain aspects of a final judgment of divorce respecting the sale of the marital home, counsel fees and support for a grandchild. Our resolution of those issues was made more complicated by a combination of some unique and unfortunate facts.
Plaintiff and defendant were married on September 29, 1956. Six children were born of the marriage, all of whom were emancipated before the action for divorce was commenced. The parties were separated in September 1987 when defendant was 52 years old. When the complaint for divorce was filed on April 21, 1988, defendant was totally disabled from rheumatoid arthritis, bone spurs on her feet and a heart condition known as angina. She has been collecting $325 a month in Social Security Disability benefits since February 1988. Defendant has been unable to work since 1985.
J., the oldest child born of the marriage, suffers from mental illnesses including schizophrenia which necessitated hospitalization on several occasions. During one of those hospitalizations, J. became pregnant and on June 29, 1981 a daughter, J.L., was born. J.L. came to live with the plaintiff and the defendant three days after birth and has remained in the marital home since, except for one six month period when the child lived elsewhere with plaintiff and the natural mother. The father of the child was also a patient at the psychiatric hospital and he has never had contact with the child.
The parties agree that the natural mother is incapable of caring for the child. On August 9, 1981, the former Juvenile and Domestic Relations Court in Ocean County granted the grandparents' request for temporary custody of J.L. The Social Security Administration paid $90 a month for J.L.'s support before plaintiff and defendant separated. In November 1987, defendant initiated proceedings to compel plaintiff to pay support for herself and for J.L. On December 7, 1987, a consent order was entered requiring plaintiff to pay $50 per week for *4 the support of J.L. Plaintiff was also required to provide certain health care benefits for the grandchild.
A trial was conducted between November 6 and 14, 1989. A dual judgment of divorce was granted. A final judgment was entered on December 15, 1989. Pertinent to this appeal, the judgment provides: (1) that defendant shall have custody of J.L.; (2) plaintiff shall pay $53 per week as support for J.L. and alimony of $57 per week; (3) the marital home located at 203 Bridge Avenue, Point Pleasant, N.J., and occupied by defendant and J.L. be listed for sale on November 13, 1990, and that the net proceeds be divided equally between plaintiff and defendant; and (4) that defendant's application for attorney fees be held in abeyance.
On this appeal, defendant contends the former marital home should not be sold because she and the granddaughter should have use and occupancy of the home until J.L. is emancipated. In his cross-appeal, plaintiff argues that he has no legal obligation to support his granddaughter, and therefore the house should have been listed for sale immediately rather than approximately one year after entry of the final judgment. Because these issues are so intimately intertwined, we shall dispose of them simultaneously.
First, we will decide whether the court erred in requiring a grandfather to support his grandchild in the circumstances of this case. While there is no statutory authority requiring plaintiff to support his granddaughter,[1] the record clearly established that plaintiff has assumed an in loco parentis relationship with the grandchild since three days following her birth. This was confirmed by the court, at plaintiff's and defendant's request, on August 19, 1981. Plaintiff even consented to a support order in 1987 after he left the marital home. *5 Because plaintiff voluntarily undertook to provide support for J.L. and to rear her, he will now be equitably estopped from repudiating that obligation. Plaintiff voluntarily undertook to support and raise the grandchild, and since plaintiff's conduct effectively excluded J.L. from being placed for adoption, J.L. now has no other place to turn for support. "To protect children from the whims of those who, for several years, treated them as their own, courts have held that both `adoptive' parents must be estopped from denying their duty to support the child." Miller v. Miller, 97 N.J. 154, 166, 478 A.2d 351 (1984); A.S. v. B.S., 139 N.J. Super. 366, 369-372, 354 A.2d 100 (Ch.Div. 1976), aff'd 150 N.J. Super. 122, 374 A.2d 1259 (App. Div. 1977). We hold that the trial court correctly held that plaintiff is obligated to provide support for J.L. To hold otherwise would inflict irreparable harm on the child.
Next, we must decide whether the trial judge erred in requiring the former marital home to be listed for sale rather than permitting defendant and the now nine-year old granddaughter to have use and occupancy of the home for the next nine years. The marital residence was the only marital asset subject to equitable distribution. We must rely heavily on the discretion of the trial judge in making the delicate and difficult decision respecting equitable distribution. Wadlow v. Wadlow, 200 N.J. Super. 372, 377, 491 A.2d 757 (App.Div. 1985); Gibbons v. Gibbons, 174 N.J. Super. 107, 114, 415 A.2d 1174 (App.Div. 1980), rev'd on other grounds, 86 N.J. 515, 432 A.2d 80 (1981).
Defendant is correct in her assertion that the existing law permitted the trial judge to allow her and the minor granddaughter to have use and occupancy of the premises for some considerable future period. Stout v. Stout, 155 N.J. Super. 196, 382 A.2d 659 (App.Div. 1977), and Gemignani v. Gemignani, 146 N.J. Super. 278, 369 A.2d 942 (App.Div. 1977) are two examples of where the custodial parent and minor children were permitted to remain in the marital home after the divorce. One of the primary concerns underlying such a decision is the *6 family's limited economic resources to procure comparable or adequate housing. See Daeschler v. Daeschler, 214 N.J. Super. 545, 553, 520 A.2d 777 (App.Div. 1986). To be sure, the decision whether to permit use and occupancy of the former marital residence impacts substantially upon the division of the marital assets and the overall alimony and support package as well. An additional consequence to the spouse not in possession is the deferment of his or her beneficial interest in the property awarded by the court as that party's distributive share of the assets subject to equitable distribution.
Our careful study of the record in light of the foregoing legal principles persuades us to conclude that the trial judge did not abuse his discretion by ordering the house to be sold. The former marital residence consists of four bedrooms in the main house and a two bedroom bungalow, both of which were described as being in need of substantial repairs, estimated at $25,000. The bungalow had been rented for $440 to $465 a month. However, as of September 1989 the bungalow was vacant. The property was appraised in 1989 at $177,000. There was a mortgage balance of $2,637 in October 1989. Overdue sewer and water bills of $1,762.18 remain unpaid since 1987. The monthly tax bill as of October 1989 was $293.41. At the time of trial, plaintiff earned $15,000 a year. The judge found that after plaintiff paid the $110 a week in alimony and child support plus an additional sum for health care coverage, he has less than $90 a week to live on himself.
In addition, the judge directed that $20,000 from plaintiff's share of the net proceeds from the sale of the house be escrowed as security for continued payment of alimony and support. Plaintiff was further directed to obtain $50,000 worth of life insurance on his life naming defendant and the grandchild as beneficiaries.
Our careful study of the record satisfies us that the judge did not routinely or mechanistically divide the marital asset. Rather, he carefully weighed all the options and ultimately concluded *7 that under all the circumstances, the house should be sold but that receipt of a substantial portion of plaintiff's net proceeds from the sale should be used as security for performance of the overall alimony and support package. The simple economic reality is that the judge had only a few difficult alternatives. Given our limited standard of review, we cannot say the judge mistakenly exercised his broad discretion. See Borodinsky v. Borodinsky, 162 N.J. Super. 437, 444, 393 A.2d 583 (App.Div. 1978); Esposito v. Esposito, 158 N.J. Super. 285, 291, 385 A.2d 1266 (App.Div. 1978).
That is not to say that defendant should not be afforded an opportunity to purchase the house. If indeed defendant desires to purchase the house on terms and conditions that do not further compromise plaintiff's anticipated net proceeds from the sale, defendant should be given the first option to purchase the property.
The remaining contention raised on the cross-appeal that the judge should have ordered the house be listed for sale sooner than November 13, 1990 has become moot with the passage of time.
Finally, defendant argues that the judge should have directed plaintiff to pay her attorney's fees which approximate $4,800. The final judgment provides that "no determination regarding counsel fees has been made by the Court." Technically, that language rendered the judgment interlocutory. See R. 2:2-3. In the interest of justice, we have permitted the appeal to proceed. The judge nonetheless must dispose of the application. When rendering a decision on the issue of counsel fees, the judge should be mindful of the three factors enumerated in Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971): (1) the wife's needs; (2) the husband's financial ability to pay; and (3) the wife's good faith in instituting or defending the action. See Darmanin v. Darmanin, 224 N.J. Super. 427, 540 A.2d 913 (App.Div. 1988), which emphasizes the fact that an *8 award of counsel fee may not be based solely on the desire or need to punish a party for bringing or defending the action.
We affirm those aspects of the final judgment under review except the disposition of the counsel fee application. We remand that issue to the trial court for determination. We do not retain jurisdiction.
NOTES
[1] Prior to 1975, a grandfather could be compelled to support a grandchild. N.J.S.A. 44:1-140. That obligation, however, was eliminated by L. 1975, c. 1, § 1, effective January 14, 1975.