868 A.2d 1143 (2005)
376 N.J. Super. 20
Gina CHRISTENSEN, Plaintiff,
v.
David CHRISTENSEN, Defendant-Appellant, and
Douglas Tymczak, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 2005.
Decided March 16, 2005.
*1144 Andrew T. Walsh, West Long Branch, argued the cause for appellant (Chamlin Rosen Uliano & Witherington, attorneys; Mr. Walsh, on the brief).
Stephen M. Pascarella, Red Bank, attorney for respondent (Mr. Pascarella, of counsel and on the brief).
Before Judges WECKER, S.L. REISNER and GRAVES.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
Plaintiff Gina Christensen's ex-husband, David Christensen, appeals an order that he pay child support for plaintiff's daughter, although the child is the biological offspring of another man, Douglas Tymczak.[1] We reverse in part and remand to the trial court for further proceedings consistent with this opinion.
The child, Jenna (a seventeen year old high school student at the time of trial), was born in 1985 to plaintiff and Tymczak, who lived together but were never married to each other. Tymczak paid child support until 1994, when the support obligation was terminated at plaintiff's request. At that time plaintiff and Jenna had been living with Christensen since 1990; they married in 1992. In 1994, all the legal work had been completed for Christensen to adopt Jenna, including Tymczak's signature on a document giving up his parental rights to Jenna, but Christensen backed out at the last minute because he did not want to be fingerprinted. Although the adoption was never finalized, Tymezak was not told until 2001, when plaintiff asked him for financial help. She and Christensen *1145 had separated in 2001 and were divorced in 2002. Plaintiff sued Tymczak for child support. The trial judge sua sponte issued an order adding Christensen as a defendant based upon her conclusion that he was an indispensable party.
Relying on Miller v. Miller, 97 N.J. 154, 478 A.2d 351 (1984), the trial court concluded that Christensen was equitably estopped from denying his obligation to support Jenna. The trial court found that, at Christensen's instance, Jenna was prevented from seeing her natural father, whom Christensen called a "scumbag." The judge also found that Jenna's mother, the plaintiff, agreed to stop accepting child support from Tymczak, based on Christensen's representation that he was going to adopt Jenna. The trial court did not believe Christensen's testimony that he did not know about plaintiff's letter waiving Tymczak's child support obligation. The judge also found that Christensen and Jenna consistently behaved toward each other as father and daughter for twelve years. The judge concluded that, since he cut his stepdaughter off from seeing her natural father, and induced her to rely on his emotional and financial support, he was equitably obligated to continue supporting her.
Although the trial judge required Christensen and Tymczak to file, under seal, case information statements setting forth their financial circumstances, she specifically indicated that she would not consider them in connection with her determination on the issue of equitable estoppel, but only for the purpose of determining the amount of child support to be paid by whichever defendant she found liable to pay child support.[2]
After determining that Christensen was responsible to pay child support, she ordered him to pay interim child support of $159 per week, pending entry of a final decision on the appropriate level of support. She directed plaintiff to submit additional information concerning Jenna's current educational situation, her income from part-time employment, and whether she would be seeking support for college expenses. At the time this appeal was filed, the trial court had not yet entered a final order concerning child support. Consequently, we conclude that this appeal is interlocutory and should have been pursued by motion for leave to appeal. R. 2:2-4. However, in light of the effort and expense incurred by all parties, the passage of time, and the significant issues presented, we grant leave to appeal nunc pro tunc.
After reviewing the trial transcript, and deferring to the trial judge's credibility determinations, we conclude that the record supports the trial judge's factual conclusions. See Cesare v. Cesare, 154 N.J. 394, 412, 713 A.2d 390 (1998). We also note the following additional testimony, which the trial judge did not mention in her decision. Tymczak testified that he relied to his detriment on his understanding that Jenna had been adopted and that he had no further child support obligation. At the time he signed the papers giving up his parental rights to Jenna, he was married and had two children. He testified that, believing he had no child support obligation for Jenna, he and his wife decided to have a third child, since they could now afford this additional financial responsibility. The trial court made no finding concerning the credibility of this testimony. The trial court also made no finding *1146 as to Tymczak's current financial ability to pay child support, particularly in light of his additional financial obligations to his second family.
As noted earlier, the trial court's decision in this case was interlocutory, since she did not enter a final order for child support. Rather, she entered an interim order for $159 per week to be paid by Christensen, and ordered the parties to submit additional information concerning Jenna's current educational situation, her income, and whether she might be seeking support for college expenses. We do not, in this opinion, disturb the interim child support order, because it may have been appropriate to order Christensen to pay interim support even if he is not ultimately responsible to pay permanent support. See M.H.B. v. H.T.B., 100 N.J. 567, 579-80, 498 A.2d 775 (1985); Miller, supra, 97 N.J. at 167, 478 A.2d 351. If Tymczak has some financial ability, but lacks ability to pay Jenna's full need because of his obligation to support his third child, or for other reasons, it is also possible that he and Christensen both may be obligated to contribute to Jenna's support. But we cannot answer any of these questions on the present record, because the trial judge has made no findings concerning the critical issue of Tymczak's financial situation.
The Supreme Court articulated the test for equitable estoppel in Miller v. Miller:
To be entitled to permanent child support, [the plaintiff], as the party alleging equitable estoppel, has the burden to prove that [the step-father/ex-husband's] conduct established the three prerequisites to equitable estoppel  representation, reliance, and detriment.
[Miller, supra, 97 N.J. at 167, 478 A.2d 351.]
The natural father is still obligated to provide support unless he is financially unable to do so:
If, as in the present case, the wife knows where the natural father is, she has the burden to bring him before the court and to seek child support from him. Once in court the burden is on the natural father to show why he should not, in equity, be required to pay child support for his children. If the court finds that the natural father should not be required to pay child support due to the stepfather's conduct, the natural father having relied thereon and having placed himself in such a position that he is unable to meet that obligation, the stepparent should be responsible for the children's continued support. This, of course, is subject to modification or change whenever the natural father can meet his obligation. We have, in countless situations, recognized that changed circumstances should be reflected in changed obligations regardless of earlier commitments.
We emphasize, however, that the natural parent should always be considered the primary recourse for child support because society and its current laws assume that the natural parent will support his or her child. It is only when a stepparent by his or her conduct actively interferes with the children's support from their natural parent that he or she may be equitably estopped from denying his or her duty to support the children.
[Id. at 169, 478 A.2d 351.]
The critical issue identified in Miller is financial detriment to the child:
In applying this rule to the present case, the trial court must decide whether the two girls, both of whom were in their late teens when this action arose, incurred any detriment as to their future support by their previous reliance on their stepfather for support. To decide that the girls have incurred such detriment, *1147 the court must find that [the stepfather's] conduct interfered with [the biological father's] present duty to support them.
[Id. at 170, 478 A.2d 351 (emphasis added).]
The essential issue, therefore, is whether Tymczak's reliance on the supposed adoption will now result in financial detriment to Jenna. That in turn requires a finding that Tymczak is not able to pay child support or at least that he is not completely able to meet Jenna's need for support. Thus, as we held in Bengis v. Bengis, 227 N.J.Super. 351, 547 A.2d 701 (App.Div.1987), the trial court cannot decide the equitable estoppel issue without considering Tymczak's financial resources:
However, we think that the question of future financial detriment is not so easy and that it may involve much more difficult and subtle issues than the mere inability of a plaintiff to haul a defendant into court.
Once having obtained jurisdiction over a natural parent, the full financial picture of all parties must be scrutinized. Included in this scrutiny should be the actual needs of the children, the ability of both the natural parents and the stepparent to meet those needs and any financial change in the status of the parties which may be said to have come about as a result of reliance on the stepparent's misrepresentations. For example, if a well-to-do stepparent promised future support to children of his or her spouses' prior marriage and, in reliance thereon, the children undertook a costly program of higher education which would have been out of the question in the absence of the stepparent's representations, financial detriment might be successfully claimed. Similarly, if a natural parent, relieved of his child support obligations because of the promise of a stepparent, gave up a lucrative profession or undertook new and financially burdensome responsibilities, his ability to support the children might well be considered to have been compromised to their detriment. What is important is that there is a broad spectrum of possibilities as far as financial detriment is concerned and that the resolution of this issue may well be a complicated, fact intensive one.

That is what is involved here. Unfortunately, the trial judge made no financial findings in this case. Indeed, the actual needs of the children were not even separately set forth in plaintiff's case information statement. Moreover, the debts and liabilities of defendant and his responsibility for the support of others undertaken subsequent to [the stepfather's] representation was not addressed despite the fact that the initial inquiry must be whether or not he is able to make the necessary financial contribution. . . . We thus reverse and remand the matter to the trial judge for a complete analysis of the financial issues in the case and for a determination as to whether the Bengis' daughters have and will suffer financial detriment as a result of the family's reliance on [the stepfather's] misrepresentations.
[Id. at 360-61, 547 A.2d 701 (emphasis added).]
We are persuaded that Bengis is completely applicable here and that the trial court's failure to consider both defendants' financial situations mandates a remand. While we appreciate the trial court's concern for Jenna's emotional attachment to Christensen and his conduct in depriving her of contact with Tymczak, that is only one factor in the equation:
[T]he doctrine of equitable estoppel "was not intended to compromise the natural parent's obligation. . . . Rather, equitable *1148 estoppel was used to provide a safety net for the child whose stepfather has affirmatively interfered with his right to be supported by his natural father."
[J.W.P. v. W.W., 255 N.J.Super. 1, 3, 604 A.2d 603 (App.Div.1991).]
Further, the quality of the stepfather's relationship with the child cannot, alone, create an estoppel:
Our Supreme Court has already emphatically stated that such conduct is no basis for estoppel:
To hold otherwise would create enormous policy difficulties. A stepparent who tried to create a warm family atmosphere with his or her stepchildren would be penalized by being forced to pay support to them in the event of a divorce. At the same time, a stepparent who refuses to have anything to do with his or her stepchildren beyond supporting them would be rewarded by not having to pay support in the event of a divorce.
[Ibid. (quoting Miller, supra, 97 N.J. at 168, 478 A.2d 351).]
Our Supreme Court has reaffirmed the construction of Miller as turning on the essential financial component of the estoppel issue:
The Court ruled in Miller that, before a duty of child support could be imposed based on equitable considerations, it must first be shown that, by a course of conduct, the stepparent affirmatively encouraged the child to rely and depend on the stepparent for parental nurture and financial support. We specifically recognized that such conduct could interfere with the children's relationship to their natural father. Under the facts, we held that the stepfather would be equitably estopped to deny his duty to continue to provide child support on behalf of his stepchildren, if it could be shown that the children would suffer financial harm if the stepparent were permitted to repudiate the parental obligations he had assumed. We further held that the natural father could continue to be legally liable for the support of these children. Id. at 169-70, 478 A.2d 351.
[M.H.B., supra, 100 N.J. at 573, 498 A.2d 775 (emphasis added).]
In M.H.B., the Court split over whether the defendant should be required under equitable principles to continue paying child support, where he had held himself out as the child's father, had sought custody of the child, and the child never knew any other father. Id. at 567, 498 A.2d 775.[3] All of the Justices agreed, however that at a minimum, the defendant should be responsible for child support on an interim basis until the trial court could make a decision on permanent child support. Id. at 579-80, 498 A.2d 775.
In light of the applicable case law on equitable estoppel, we are constrained to remand this matter to the trial court for findings on what amount of child support Jenna needs and whether Tymczak is financially able to meet those needs. If he is financially able, taking into consideration his other family obligations, then there is no basis for the application of equitable estoppel. If he is unable to pay some or *1149 all of Jenna's child support, then the court must determine whether his financial situation is attributable to Christensen's actions or if those actions have caused any other financial detriment to Jenna. For example, the trial court has already found that Christensen's conduct led Tymczak to believe that he no longer had child support obligations. Thus, for seven years, Tymczak was conducting his financial affairs on the understanding that he had been permanently relieved from paying child support. The court must decide whether Tymczak relied on that understanding in deciding to undertake other specific financial obligations, such as having a third child, which now hinder his ability to pay child support. Depending upon the facts found, the trial court may determine that both men bear some responsibility for child support. Cf. Cumberland County Bd. of Soc. Servs. v. W.J.P., 333 N.J.Super. 362, 369, 755 A.2d 1171 (App.Div.2000).
It must be clear to all parties, however, that the issue of the defendants' financial obligation to Jenna cannot be made to turn on the nature of their current relationship, or lack of relationship, with Jenna. The picture which emerges from the hearing is of a young woman in need of emotional support. Basing a child support decision on which man provides her with greater emotional closeness and support would only harm Jenna, and would financially penalize both men, and their families, for maintaining a caring and loving relationship with her. See Miller, supra, 97 N.J. at 168, 478 A.2d 351; J.W.P., supra, 255 N.J.Super. at 3, 604 A.2d 603.[4]
Reversed in part and remanded for further proceedings consistent with this opinion. The proceedings on remand, including the judge's decision, shall be completed no later than April 30, 2005. We do not retain jurisdiction.
NOTES
[1] Throughout this opinion, we refer to Gina Christensen as "plaintiff." We refer to the two defendants as "Christensen" and "Tymczak."
[2] In light of our disposition, all parties must file updated CIS forms and must serve them on all other parties.
[3] Three Justices would have found equitable estoppel under an earlier line of cases, reaffirmed in Miller, in which a non-biological parent may not repudiate a child whom he has consistently recognized from birth as being his own. Id. at 568-80, 498 A.2d 775. See Ross v. Ross, 126 N.J.Super. 394, 314 A.2d 623 (J. & D.R. Ct.1973), aff'd, 135 N.J.Super. 35, 342 A.2d 566 (App.Div.1975); A.S. v. B.S., 139 N.J.Super. 366, 354 A.2d 100 (Ch.Div.1976), aff'd, 150 N.J.Super. 122, 374 A.2d 1259 (App.Div.1977). The other three Justices would have remanded for further inquiry as to the natural father's financial ability to support the child. Id. at 580-85, 498 A.2d 775.
[4] In light of the financial and emotional cost of this type of litigation, we also suggest that mediation might be appropriate; reasonable parties might be able to settle this matter in the interest of all concerned.