_In re_ BRITTANY LEE GOLLAHON _et al._, Minors (Beulah E. West, Petitioner-Appellant, v. Rebecca A. Gollahon, Respondent-Appellee).

Fourth District   No. 4—98—0050

Opinion filed February 22, 1999.

Norman J. Fombelle and Kent A. Rathbun, both of Burger, Fombelle, Zachry & Rathbun, P.C., of Decatur, for appellant.

No brief filed for appellee.

JUSTICE COOK delivered the opinion of the court:

On September 9, 1997, Beulah West filed a petition pursuant to section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) seeking visitation with her two granddaughters, Tiffany and Brittany Gollahon, born August 11, 1986 (the twins). 750 ILCS 5/607(b)(1) (West 1996). Respondent Rebecca Gollahon and Beulah's son, Robert Gollahon, who died on May 13, 1997, are the twins' parents. Following a hearing, the trial court granted Beulah's petition, with visitation to occur the third Saturday of each odd-numbered month and the third Sunday of each even-numbered month from 8 a.m. to 6 p.m. Beulah appeals the visitation order, contending the trial court granted her an inadequate amount of visitation. We affirm.

From the time they were born, the twins visited Beulah's home almost every day while their parents worked. After the children started school, Rebecca would take them to Beulah's home before school, on her way to work. Beulah would feed and dress them, take them to school, then pick them up. The twins would stay at Beulah's after school and do homework until Rebecca got off work. Beulah also participated in the twins' school and extracurricular activities. The twins usually stayed overnight with Beulah on Wednesdays to attend church services, and on the weekends, arriving on Saturday and going back to their parents after church on Sunday. During the summer, Rebecca would take the twins to Beulah's home on a daily basis and they continued to stay there on Saturday nights.

Beulah testified that regular visitations between Beulah and the twins stopped upon Robert's death, although Beulah continued baby-sitting the twins the remaining weeks of the 1996-97 school year after

Robert died. Melody, Beulah's daughter and Robert's sister, testified that within a week after Robert's death, Rebecca told her she did not want the girls to visit Beulah, that she and Beulah were no longer considered family, and that they had a new family now.

Rebecca and the twins moved in with Rebecca's boyfriend on July 9, 1997. In the seven months between Robert's death and the hearing on the petition, Beulah spent time with the twins on three occasions. Beulah testified she had been frustrated in some of her attempts to initiate telephone contact with them and that the twins "never" called her. On one occasion Rebecca's boyfriend told Beulah not to call. Melody testified that the twins told her Rebecca would not let them visit Beulah.

Tiffany and Brittany testified that during the 1997-98 school year, they went home after school, did chores, watched TV and did homework, instead of going to Beulah's. Since they stopped visiting Beulah regularly, she has telephoned them. Brittany attempted to call Beulah on one occasion but did not reach her.

According to Tiffany, Beulah said something bad about Rebecca "practically every time I [went] over there." Beulah would tell them how Rebecca's past life was bad, that Rebecca had been married so many times and "all sorts of bad things." Brittany also recalled that when she was at Beulah's, Beulah would make derogatory comments about Rebecca, that she was surprised how Rebecca's married daughter turned out as good as she did and that it was Rebecca's fault the twins' dad had been unhappy.

According to Tiffany, Rebecca and her boyfriend had told the twins that they could call or visit Beulah anytime they wanted. Tiffany recalled that they cancelled a visit with Beulah during the summer of 1997 because they preferred to stay at home to visit with Rebecca's boyfriend's child. Brittany testified that "sometimes when I want to, I will visit [Beulah], and when we get older we will want to visit her more often."

Rebecca testified that when she asks the twins, they indicate that they do not want to visit Beulah. Rebecca did not prevent the twins from visiting Beulah and they could visit her if they wanted to. Rebecca has told the twins it is their choice whether they want to visit Beulah. Rebecca also has no objection to the twins calling Beulah.

During the summer of 1997, two planned weekend visits to Beulah's were cancelled, once because the twins chose to stay at home to visit with Rebecca's boyfriend's daughter, the other because the twins chose to stay at home to visit with Rebecca's nephews. Rebecca did not know the last time the twins attended church.

In its order granting Beulah visitation, the trial court found that

Beulah loves the twins and had extensive contact and a close relationship with them in the past. The trial court understood why Beulah might be upset with Rebecca, but found she has no right to control Rebecca's life and Beulah's feelings toward Rebecca have caused Beulah to inappropriately place the twins in the middle and to say things about Rebecca in the presence of the twins that have damaged the relationship between the twins and Beulah. The court concluded that Beulah had to stop the inappropriate behavior if she wished to continue visiting with them and that visitation with the twins was in their best interest only if she stopped the inappropriate behavior.

Beulah appeals and argues that the visitation awarded to her does not constitute *"reasonable* visitation privileges." (Emphasis added.) 750 ILCS 5/607(b)(1) (West 1996). Although Rebecca has failed to file an appellee's brief, we will address the merits of this appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).

■ Section 607(b)(1)(C) of the Act provides:

"The court may grant reasonable visitation privileges to a grandparent *** of any minor child upon petition to the court by the grandparents *** if the court determines that it is in the best interests and welfare of the child ***. Except as provided in paragraph (2) of this subsection (b), a petition for visitation privileges may be filed under this subsection (b) whether or not a petition pursuant to this Act has been previously filed or is currently pending if one or more of the following circumstances exist:

\* \* \*

(C) one of the parents is deceased." 750 ILCS 5/607(b)(1)(C) (West 1996).

A trial court's decision regarding visitation will not be disturbed on review absent an abuse of discretion. *Weybright v. Puckett*, 262 Ill. App. 3d 605, 608, 635 N.E.2d 119, 122 (1994). The trial court has a superior opportunity to observe the witnesses and evaluate the evidence. *In re Marriage of Lindsey*, 158 Ill. App. 3d 769, 770-71, 511 N.E.2d 198, 199 (1987).

Although the section 607 best-interest standard does not guarantee that grandparents have visitation, "[n]ormally, the loving, caring, and reasonable grandparent should be given visitation, and, normally, this visitation should not be restricted." *Lindsey*, 158 Ill. App. 3d at 770, 511 N.E.2d at 199. However, section 607(b) "should not be interpreted as equating [grandparents'] rights with parental rights." *Lindsey*, 158 Ill. App. 3d at 771, 511 N.E.2d at 199. Parents, not grandparents, are responsible for the children's custody, care, education, nurture, and support. *Lindsey*, 158 Ill. App. 3d at 771, 511 N.E.2d at 199-200; *McVey*

*v. Fredrickson*, 226 Ill. App. 3d 1082, 1083, 590 N.E.2d 996, 997 (1992). Grandparents do not step into their deceased child's shoes in regard to visitation with the grandchildren under section 607. *Weybright*, 262 Ill. App. 3d at 608, 635 N.E.2d at 121.

In *McVey*, paternal grandparents were awarded visitation one day per month with their grandchildren after their son's postdissolution death. For two years (after the son's death and until the daughter-in-law remarried), the grandchildren spent considerable amounts of time with the grandparents during each school day, sometimes spending the night while the daughter-in-law worked two jobs. After the daughter-in-law's remarriage, the grandchildren gradually spent less time with the grandparents, because the daughter-in-law became a full-time housewife and she also wanted the children to attend church with her. *McVey*, 226 Ill. App. 3d at 1082-83, 590 N.E.2d at 996-97. The trial court did not abuse its discretion in the amount of visitation it awarded. Even though the grandchildren and grandparents had a close relationship following the son's death, after the daughter-in-law remarried the children enjoyed more of a normal family life. *McVey*, 226 Ill. App. 3d at 1084, 590 N.E.2d at 997.

In *Lindsey*, the paternal grandmother received visitation with her grandchildren one day per month to occur at her ex-daughter-in-law's home. *Lindsey*, 158 Ill. App. 3d at 769-70, 511 N.E.2d at 199. The trial court did not abuse its discretion in fashioning the visitation order. Although the grandmother baby-sat the children prior to the dissolution, afterward, the grandmother was hostile toward her ex-daughter-in-law and the trial court was concerned with the grandmother's possible counterproductive relationship with the grandchildren. *Lindsey*, 158 Ill. App. 3d at 770-71, 511 N.E.2d at 199-200.

■ The trial court in this case did not abuse its discretion in granting Beulah visitation with the twins one day per month. The trial court found and was concerned with Beulah's hostility toward Rebecca, which she relayed to the twins, and how that conduct adversely affected her relationship with the twins. See *Lindsey*, 158 Ill. App. 3d at 771, 511 N.E.2d at 200 ("[Grand-parents] must not, however, create problems by interfering with the duties of the custodial parent. Grandparents must not attempt to prejudice children toward parents"). Even though Beulah previously spent a great deal of time with the twins, it is now appropriate for them to spend much of their time with their mother, in their "new" familial setting. The trial court's visitation order attempted to provide for Beulah's interest as well as the best interest of the children (*Lindsey*, 158 Ill. App. 3d at 771, 511 N.E.2d at 200), and we cannot find the trial court abused its discretion in doing so.

We affirm the judgment of the circuit court of Macon County.

Affirmed.

STEIGMANN and GARMAN, JJ., concur.