756 A.2d 625

A.N., O/B/O S.N., A MINOR, PLAINTIFF–APPELLANT, v. S.M., SR., O/B/O S.M., JR., A MINOR, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 8, 2000—Decided August 1, 2000.

Before Judges STERN, KESTIN and STEINBERG.

*Obermayer, Rebmann, Maxwell & Hippel,* attorneys for appellant (*Kimberly D. Sutton,* on the brief).

*Hasbrouck & Uliase*, attorneys for respondent (*Carolyn B. Uliase*, on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

Plaintiff, on behalf of her minor daughter, S.N., filed this action for "support and paternity and temporary custody" of S.N.'s daughter, K.N. The complaint named S.M., Sr., as the defendant, although the summons was issued to his son, S.M., Jr., the father of K.N. The complaint requested "the court to enter a[n] order of custody, child support and to [establish] paternity on behalf of ... [K.N.] DOB: 11/12/98," noting that "the petitioner is the [maternal grandmother] of the child [and that] *both parents of the child are minors*." [1] Ultimately, the paternity test results were returned, after which a "consent order" was entered on June 14, 1999, declaring that S.M., Jr. "is the father of the minor child, [K.N.]."

Plaintiff appeals from an order of March 12, 1999, which treats S.M., Jr. as the "defendant," and provides:

1. The Court reiterates its position that there is no obligation in law for grandparents to provide support for grandchildren because the parents of the children are minors. As a general rule, parents are not responsible for the acts of their children. The plaintiff suggests that as a matter of equity the paternal grandparents should be responsible. This is a false assumption inasmuch as equity must follow the law. Because plaintiff thinks it is fair, it does not make it equitable. What plaintiff is suggesting is a moral decision. The Court is not legally authorized to enforce a moral decision.

2. The amount of support required to be paid by the defendant is in keeping with the Court's discretion in cases such as these. In the event the defendant is working full time in the summer time, the Court will reconsider the amount of support and determine whether additional support should be paid. However, he is now not working as he is a full time student.[2]

This order confirmed the trial judge's oral conclusion, finding:

---

[1] A separate "complaint for filiation and support" was filed against S.M., Jr., by the Gloucester County Board of Social Services on behalf of S.N. The County sought a judgment of reimbursement "for any and all assistance which it has granted to plaintiff." We are not told of the disposition of that complaint.

[2] We bypass the fact that the order does not comply with *R.* 4:42–1.

There's no authority I have, based in law, to grant what you're requesting. I know the suggestion by the plaintiff is that this would be the fair thing to do, and in general terms, in layperson's term, it may well be the fair thing to do.

But equity must follow the law. If I have no legal authority, I can't enter an order just because it seems like it's the right thing to do.

As the Court pointed out, quite candidly, this is a determination that really goes to the moral fabric of the parties. And I have no legal basis to impose an obligation on the grandfather and I'm not going to do so.

As plaintiff-grandmother, on behalf of her daughter, puts it:

This case involves the novel issues of whether Defendant, (the father of a minor boy) must pay to Plaintiff, (the mother of a minor girl), payments for an infant born to said minor children. The Trial Court found that both Plaintiff [maternal grandmother] and Defendant [paternal grandfather] can turn a blind eye to the additional legal responsibilities incurred by their unemancipated, minor children and that the Plaintiff and Defendant have no legal obligations to pay additional support to their child so they can support their infant.

The baby, K.N., was born November 12, 1998. S.N., the mother, was fourteen when she became pregnant, and S.M., Jr., the father, was fifteen at the time. He is still under eighteen, although his date of birth is not noted in the record.[3] The baby and S.N. live with plaintiff. As is clear from its order, the trial court concluded that neither grandparent had an obligation to support the baby, and therefore declined to hold that S.M., Sr. was obligated to pay any support. However, S.M., Jr., the baby's father, was ordered to pay $20 a week in support. That amount represents S.M., Jr.'s entire allowance, and at times, perhaps more than his $15–$20 allowance.

In his undated certification, S.M., Jr. stated that while he originally told the judge his allowance was $15 to $20, "[r]eally I receive $15.00 per week." In his February 1999 certification, S.M., Sr. stated that "[m]y son is given $15.00 a week for chores he does around the house," that he and his wife "have done everything that we can do to make sure [S.M., Jr.] does as well as he can" in school, and that he is "very concerned that [S.M., Jr.'s] taking a job will hamper [the] progress" he has been making.

---

[3] In his February 1999 certification, S.M., Sr. stated that S.M., Jr. "just turned 16 years old."

The following facts, as detailed in plaintiff's brief, appear uncontested:

4. [S.N.] and [S.M.], Jr. were not emancipated when [K.N.] was born and they are presently both fully dependent on their respective parents for support.

5. [S.N.] and her baby reside at home with [S.N.]'s mother, [A.N.], the plaintiff herein.

6. [S.N.] has not attended high school since the birth of her baby, she is being home-schooled to allow her to stay home with the baby.

7. When [K.N.] was born, her father [S.M.], Jr. was a sophomore in high school. [S.M., Jr.] has never worked and he is fully dependent on his father, defendant [S.M.], Sr. for all of his support.

8. Defendant [S.M.,] Sr. does not believe it is in the best interest of his son, [S.M.], Jr. to share the responsibility of parenthood. Defendant does not allow his son to work because he is concerned that taking a job would hamper the progress that [S.M., Jr.] has made in high school.

. . . .

10. [S.M.], Jr. advised the Court that his allowance was $15.00 to $20.00 per week.

11. Defendant [S.M.], Sr. alleges he gives his son an allowance of $15.00 per week for doing chores around the house.

12. Since the birth of the infant child, [p]laintiff, [A.N.] has provided all of the support and maintenance of both her daughter, [S.N.] and [S.N.'s] child [K.N.].

It also appears uncontested, as stated by S.M., Sr.:

Defendant/Respondent S.M.[, Jr.] has never worked and was a full time student. His grades had been below average to the point that he attended summer school during the summers of 1997 and 1998. He did poorly on the early warning test, the precursor for the high school proficiency test. Although his grades improved his sophomore year, Defendant/Respondent [S.M.], Sr. fears his working would result in a return to failing or below average grades.

Plaintiff complains that "the Court's failure to consider the financial status of Defendant [grandfather S.M., Sr.] was erroneous" because defendant is responsible to pay the legal obligations of his unemancipated minor child and the minor son's "obligation to support his infant must be considered when establishing defendant's legal obligation to support his child"; that "[t]he Doctrine of Necessity warrants that Defendant contribute to [K.N.'s] support"; that the denial of relief "unlawfully discriminates in that the entire financial burden of support . . . is placed on the parents of minor girls"; that "[d]efendant's allegations concerning abortion or adoption [and S.M., Sr.'s insistence that he has no responsibility

for the baby because he had no part in the decision making with respect to the birth or rearing of the child] are irrelevant"; and that "the Trial Court's failure to impute income to the minor father was inconsistent with the law."[4]

 We agree with the trial court that generally a grandparent has no legal obligation to support a grandchild. There are exceptions when the grandparent obtains legal custody or guardianship or where the grandparent otherwise acts in *loco parentis*. *See, e.g., Watkins v. Nelson,* 163 *N.J.* 235, 253–54, 748 *A.*2d 558 (2000); *Savoie v. Savoie,* 245 *N.J.Super.* 1, 4, 583 *A.*2d 762 (App.Div.1990). However, no recognized exception applies, and in the absence of a statute we must agree with the trial judge that defendant cannot be compelled to support the offspring of his unemancipated child. *Savoie, supra,* 245 *N.J.Super.* at 4, 583 *A.*2d 762; *cf. Miller v. Miller,* 97 *N.J.* 154, 158–62, 478 *A.*2d 351 (1984) (regarding step parents); *see also Troxel v. Granville,* —— *U.S.* ——, 120 *S.Ct.* 2054, 147 *L.Ed.*2d 49 (2000) (stating that grandparents have no right of visitation over objection of surviving parent).

---

[4] In her recitation of facts, plaintiff asserts "[d]efendant believes that [she] should not be permitted to complain about the financial burdens associated with raising an infant, alleging the Plaintiff should have had her minor daughter have an abortion or she should have had the infant put up for adoption." In the trial court, S.M., Sr. certified that he was given "no say whatsoever with regard to the child … [and] whether the child would be placed for adoption or kept in the family." S.M., Jr. certified that S.N. told him that "her mom wouldn't let her get an abortion" and that "[f]rom everything I know it was [plaintiff's] decision that there not be an abortion." Plaintiff argues that these allegations "are irrelevant." S.M., Sr. responds that "it would be inequitable to exclude defendant [S.M., Sr.] from the decision making process regarding abortion or adoption and later look to him for support, especially since he did not act to create the minor child." However, he also states that "under the law … S.N. had the sole right to determine if her pregnancy would be terminated" and asserts that "he was not even consulted in the decision making process," at least with respect to adoption. We decline to address the issue, particularly given the factual dispute, and the fact the trial court's decision did not address the subject and was based on the lack of a support obligation on defendant S.M., Sr.'s part.

Because under *Filippone v. Lee*, 304 *N.J.Super.* 301, 308–09, 700 A.2d 384 (App.Div.1997), S.M., Jr. cannot be considered emancipated by virtue of the birth of a child, plaintiff claims that S.M., Sr.'s income is relevant to the consideration of S.M., Jr.'s child support obligation. However, neither *Filippone* nor any other case in New Jersey requires a grandparent to support a grandchild except when standing in the legal shoes of a parent or at least having the responsibility of a custodian.

In other states any obligation of a grandparent to provide support flows from a statute embodying the legislative will. *See, e.g., Ex parte Lipscomb*, 660 *So.*2d 986, 988 (Ala.1994) (declining to establish that grandparents have "a legal duty to support their grandchildren solely because of the familial relationship"); *Cummings v. Cummings*, 182 *Ariz.* 383, 897 *P.*2d 685, 688 (Ct.App. 1995) (stating that "[u]nder Arizona law, the duty of child support is placed solely on the parents of the children, not on grandparents or other relatives"); *In re Gollahon*, 303 *Ill.App.*3d 254, 236 *Ill.Dec.* 608, 707 *N.E.*2d 735, 738 (1999) (observing that in grandparents' visitation cases, "[p]arents, not grandparents, are responsible for the children's custody, care, education, nurture, and support"); *In re Paternity of C.J.H.*, 149 *Wis.*2d 624, 439 *N.W.*2d 615, 617 (Ct.App.1989) (holding that under a new Wisconsin grandparent liability statute, a grandparent has the duty of support "[i]f a dependent son fathers or a dependent daughter conceives a child").

We reject the contention that *N.J.S.A.* 44:4–101 creates a cause of action against S.M., Sr. That statute requires the father and mother of a child under eighteen who receives public assistance to maintain the child if they have sufficient ability. The statute also requires the children of a parent who receives public assistance to maintain the parent. *Ibid.* The statute further requires the spouse of one who receives public assistance to maintain the recipient spouse. *Ibid.* But the statute does not require grandparents to maintain grandchildren. Thus, under the statute, plaintiff could be compelled to maintain S.N. In addition,

S.N. and S.M., Jr., had they the financial ability, could be compelled to maintain K.N. However, S.M., Sr. could not be compelled to maintain either S.N. or K.N. He could only be compelled to maintain S.M., Jr.

Our understanding of the Legislature's policy as it relates to the issue before us is evidenced by *N.J.S.A.* 44:1–140, which essentially parallels *N.J.S.A.* 44:4–101 with respect to municipal, county or joint welfare assistance. *N.J.S.A.* 44:1–140 requires that parents be responsible for the support of their children until 18 years of age. Significantly, that statute, as it stood prior to 1975, also placed the obligation on grandparents.[5] In 1975 that obligation was eliminated. *See Savoie, supra,* 245 *N.J.Super.* at 5, 583 *A.*2d 762.

■ Moreover, there is no equal protection violation. *See Doe v. Poritz,* 142 *N.J.* 1, 91–94, 662 *A.*2d 367 (1995). There is no statutory or judicial requirement that the parents of minor girls who have children out-of-wedlock must support their grandchildren. Nor is there a statutory or judicial requirement that the parents of minor boys who father children out-of-wedlock must support their grandchildren. In fact, in declining to order defendant to support K.N., the judge did not order plaintiff to support K.N. Plaintiff supports K.N. because, to her credit, she assumed that responsibility voluntarily.

In essence, we decline to find, in the absence of any legislative policy to support it, any obligation of a non-custodial grandparent to support a grandchild, and this is so even though the grandchild is the offspring of an unemancipated minor. Such an obligation could dramatically change the financial and other relationships within a family, and in our view such a policy change should come from the Legislature.

---

[5] *L.* 1975, *c.* 1 § 1 deleted the reference to "grandmother" and "grandfather." *L.* 1975, *c.* 1, § 2 also amended *N.J.S.A.* 44:4–101 to read the same as *N.J.S.A.* 44:1–140.

■ Nor can the "doctrine of necessaries" be used to defeat the principle that defendant has no duty to support his non-custodial grandchild. The doctrine applies to parents and their children, not to grandparents and their non-custodial grandchildren. *See Greenspan v. Slate,* 12 *N.J.* 426, 430, 97 *A.*2d 390 (1953) (finding that *"parents* of an infant *child* are liable [to a medical doctor], in the absence of a contract, express or implied in fact, for necessaries furnished their child in an emergency" (emphasis added)). We recognize, however, that here plaintiff is essentially seeking to impose on S.M., Sr. the obligation to support his son, S.M., Jr., to the extent the latter has a legal duty to support his daughter. Hence, plaintiff sees the support obligation of S.M., Jr. to be a "necessity" for which his father is, in turn, obligated while S.M., Jr. is an unemancipated minor. Although we recognize that the doctrine of necessaries and obligations of support has been expanded greatly since the pre-Revolutionary common law, *see Greenspan, supra,* 12 *N.J.* at 440–43, 97 *A.*2d 390, we resist the temptation to further expand the doctrines.

■ "Courts have the equitable power to establish … support orders in connection with a pending matrimonial action, or after a judgment of divorce or maintenance, and to revise such orders as circumstances may require." *Crews v. Crews,* 164 *N.J.* 11, 24, 751 *A.*2d 524 (2000) (citing *Lepis v. Lepis,* 83 *N.J.* 139, 145, 416 *A.*2d 45 (1980)); *see also Newburgh v. Arrigo,* 88 *N.J.* 529, 443 *A.*2d 1031 (1982) (finding a duty to provide education). To permit a third party to whom a minor is indebted to seek an increase in the parent's support of the minor, or to consider the debt a "necessary" so that it can be reduced to judgment against a parent, might unduly interfere with the family relationship and a parent's right to raise a child. *Troxel, supra,* —— *U.S.* at ——, 120 *S.Ct.* at 2060, 147 *L.Ed.*2d at 57; *see, e.g., Santosky v. Kramer,* 455 *U.S.* 745, 753, 102 *S.Ct.* 1388, 1394–95, 71 *L.Ed.*2d 599, 606 (1982). What if S.M., Sr. counseled his son not to engage in a premarital sexual relationship and said he would not support the grandchild if S.M., Jr. did? Should S.M., Sr. still be held responsible? The

same can be asked of A.N. who may have counseled S.N. not to engage in intercourse. A.N. could have chosen not to support the baby. Once the parents of minor parents can be deemed responsible for the grandchild's support, why would they not become liable for another type of debt for some other civil or criminal wrongdoing the conscientious parent counseled his or her unemancipated minor not to commit? Where the legislature wants to impose an obligation on a parent for the conduct of his or her unemancipated minor, it has done so. *See N.J.S.A.* 2A:53A–15 (relating to destruction of property); *N.J.S.A.* 18A:37–3 (relating to school vandalism).

We nevertheless remand for further proceedings with respect to S.M., Sr.'s obligation of support under the unique facts of the case, which flow from defendant's own, independent responsibilities and decision making. It is uncontested that S.M., Jr. was a marginal student whose father did not want him to be employed in order that he could improve, or at least maintain, his grades. Consequently, S.M., Jr.'s only income was his weekly allowance of between $15 and $20. S.M., Jr. was therefore ordered to pay child support in the amount of $20 per week, or 100 percent of his income. The record therefore suggests that S.M., Jr. could have earned more income but for his father's decision that he devote no time to the work, which could generate such earnings. *See Halliwell v. Halliwell,* 326 *N.J.Super.* 442, 448, 741 *A.2d* 638 (App.Div.1999) (holding that "[t]he potential earning capacity of an individual, not his or her actual income, should be considered when determining the amount a supporting party must pay"). Hence, the limitations on S.M., Jr.'s ability to earn income is directly attributable to defendant's own act and decision making. By exercising his parental discretion, which he had every right to do, it was foreseeable that S.M., Sr.'s decision to prevent S.M., Jr. from increasing his income was also reducing S.M., Jr.'s ability to support his child, to the detriment of A.N. and S.N. as well as the child. *See, e.g., J.S. v. R.T.H.,* 155 *N.J.* 330, 337–39, 352, 714 *A.2d*

924 (1998); *Clohesy v. Food Circus Supermarkets, Inc.*, 149 *N.J.* 496, 502, 694 *A.*2d 1017 (1997).

*N.J.S.A.* 9:17–53(e) compels the court to undertake the following when setting a child support award:

> In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court shall apply the child support guidelines.... In cases in which the court finds that a deviation from these guidelines is appropriate, the court shall consider all relevant facts when determining the amount of support, including the:
>
> (1) Needs of the child;
>
> (2) Standard of living and economic circumstances of each parent;
>
> (3) Income and assets of each parent, including any public assistance grant received by a parent;
>
> (4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children and the length of time and cost for each parent to obtain training or experience for appropriate employment;
>
> (5) Need and capacity of the child for education, including higher education;
>
> (6) Age and health of the child and each parent;
>
> (7) Income, assets and earning ability of the child;
>
> (8) Responsibility of the parents for the support of others; and
>
> (9) Debts and liabilities of each child and parent.
>
> The factors set forth herein are not intended to be exhaustive. The court may consider such other factors as may be appropriate under the circumstances.

*See also N.J.S.A.* 2A:34–23(a).

In setting S.M., Jr.'s weekly child support obligation, the trial judge neither applied the child support guidelines nor found that a deviation from the guidelines was appropriate, in which case she would have determined the child support award based upon the statutory factors. The judge should have followed the statutory direction and imputed income to S.M., Jr. based thereon. If S.M., Jr. could not pay the imputed amount (assuming it is more than $20 a week) because of a decision made by his father, S.M., Sr. should be deemed responsible.

We do not suggest that defendant had no legal right to direct his son to devote all his non-school time to school work or to prevent him from working on the outside. Nor do we suggest that defendant does not have the right to control his son's allowance. To the contrary, questions of S.M., Jr.'s "care, custody

and management" is for his parent or parents to decide. *Santosky v. Kramer*, 455 *U.S.* 745, 753, 102 *S.Ct.* 1388, 1394–95, 71 *L.Ed.*2d 599, 606 (1982). "[P]arents have the right to raise and care for their children as they see fit." *R.T. v. J.E.*, 277 *N.J.Super.* 595, 598, 650 *A.*2d 13 (Ch.Div.1994). Parents have a "fundamental right . . . to make decisions concerning the care, custody, and control of their children." *Troxel, supra*, —— *U.S.* at ——, 120 *S.Ct.* at 2060, 147 *L.Ed.*2d at 57. But having limited S.M., Jr.'s ability to earn income, S.M., Sr. must be responsible for the consequences of his own decision. Stated differently, after considering S.M., Jr.'s age and school obligations, the trial judge should impute income that S.M., Jr. could earn but for his father's directions to the contrary, and the judge should direct S.M., Sr. to pay the difference between the imputed amount and the amount S.M., Jr. can afford to pay. We so conclude because, irrespective of defendant's motives and the long-term best interests of K.N., which may flow from S.M., Jr.'s improved grades, defendant's decision-making has interfered with S.M., Jr.'s ability to support his daughter and has increased the burden on plaintiff.[6]

The judgment under review is reversed, and the matter is remanded to the Family Part for further proceedings relating to defendant's obligation to contribute to K.N.'s support for the period of time S.M., Jr. has been and remains an unemancipated minor.

KESTIN, J.A.D., concurring.

I agree that, absent special circumstances or a duty established by statute, a grandparent has no direct legal obligation to contrib-

---

[6] The trial judge should also consider S.N.'s income, if any, and determine whether—despite her obligations as a mother—she could work outside the home, and, if so, whether her failure to do so should result in the imputation of income to her. *Terry v. Terry*, 270 *N.J.Super.* 105, 121, 636 *A.*2d 579 (App.Div.1994) (finding reversible error when a court enters a support order without consideration of the child support guidelines or the parties' case information statements, and by considering only the father's wages but failing to make any inquiry as to the mother's earnings).

ute to the support of a grandchild. Also, while I do not disagree with the basis upon which the majority has imposed potential responsibility on S.M. Sr., it strikes me as a relatively strained way to achieve the correct and equitable result in this matter.

I would apply the rule of necessaries to this case. It is a more forthright, straightforward, and sensible way of achieving the same result. And it is right!

S.M. Jr.'s obligation to contribute appropriately (measured by his earning capacity) to the support of his child is necessary in every sense of the term, no less so than S.M. Jr.'s own requirements for food, shelter and clothing, and even more so because it fulfills a legal obligation imposed on him. A.N. has provided that necessary to S.M. Jr. and now seeks recompense from S.M. Jr.'s parent. Granting the relief sought would be eminently consistent with Chief Justice Vanderbilt's reasoning on behalf of the Supreme Court almost a half-century ago in *Greenspan v. Slate*, 12 *N.J.* 426, 97 *A.*2d 390 (1953). Even beyond specific application of the rule of necessaries, "[i]n equity, the parents' obligation to support and educate their children is much more than a principle of natural law; it is an obligation enforced wherever equity has jurisdiction." *Id.* at 435, 97 *A.*2d 390.

I know of no authoritative statement or any gloss on the venerable rule of necessaries that requires us to hold otherwise. S.M. Sr.'s responsibility for this necessary provided by plaintiff to his son is, in every realistic sense, a discharge of S.M. Sr.'s obligation to maintain his own child. The majority's "parade of horribles," *i.e.*, the difficult issues that might arise in other contexts from applying the rule of necessaries, does nothing to undermine my sense that the rule of necessaries rightly applies in this case on the facts before us. *See id.* at 439, 97 *A.*2d 390. I have confidence in the judiciary's ability to make appropriate distinctions in other situations.

In a more general vein, I disagree with the majority's view that growth in the law is solely a legislative prerogative. As judges in a system rooted in the common law, we have an independent

obligation, where circumstances require, to fill lacunae in the law—as the Supreme Court did in *Greenspan*—in cases implicating the legal relationships of private parties. *See ibid.* We should not shrink from fulfilling that time-honored responsibility given to the courts especially where equitable considerations are presented. We should reach the correct result for the best reasons.