Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor

v.

WALTER W. CHENEY, INC., and Walter W. Cheney, Individually and as President.

Civ. No. 79–328–D.

United States District Court, D. New Hampshire.

March 19, 1981.

Albert H. Ross, Regional Sol., U. S. Dept. of Labor, Boston, Mass., for plaintiff.

Allan W. Keener, Rochester, N. H., for defendants.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

Plaintiff[1] brings this action against the defendants hereinafter named pursuant to the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201 et seq. (Act) seeking recovery of certain compensation allegedly due certain hereinafter identified employees of defendants for periods between October 29, 1977 and February 17, 1979. The matter has been tried to the court which has reviewed the evidence, exhibits, pleadings, legal memos and other documents on file.

It has been stipulated that defendant Walter W. Cheney, Inc. (Corporate defendant) at all pertinent times was a New Hampshire corporation with a principal place of business situated in Newmarket, New Hampshire, and at that place and elsewhere it conducted the business of construction of residential homes and real estate sales. It has similarly been stipulated that defendant Walter W. Cheney (Cheney) is a resident of Durham, New Hampshire who has at all pertinent times been President of the Corporate defendant and who actively manages, supervises and directs the business affairs and operations of the Corporate defendant. It has further been stipulated that Cheney at all times material had acted directly and indirectly in the interest of the Corporate defendant in relation to its employees and was and is therefore an employ-

---

1. The action was originally brought in the name of Ray Marshall, former Secretary of Labor; Raymond J. Donovan, the current Secretary of Labor, has been substituted as party plaintiff for Mr. Marshall. Rule 25(d), Federal Rules of Civil Procedure.

er of said employees within the meaning of the Act; that at all times relevant to this action both defendants were engaged in related activities performed through unified operation or common control for common business purpose, and that at all times relevant they were an enterprise within the meaning of Section 3(r) of the Act. 29 U.S.C. § 203(r). Additionally, it has been stipulated that at all times relevant both defendants were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the Act, 29 U.S.C. § 203(s)(1), and that they were employers who had employees engaged in commerce or in the production of goods for commerce or handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce; and that said enterprise has, and has had, an annual gross volume of sales made or business done of not less than $250,000. Defendants have also stipulated with plaintiff that at all relevant times they were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(4) of the Act, 29 U.S.C. § 203(s)(4), in that said enterprise has, and at all times relevant to this action has had, employees engaged in commerce or in the production of goods for commerce, including employees handling or otherwise working on goods or materials that have been moved in or produced for commerce, and that said enterprises engaged in the operation of construction and sales.

The specific issue based on the evidence and legal arguments advanced to the Court are whether three female sales agents, to wit, Mrs. Abby Machamer, Mrs. Janis Raabe, and Mrs. Christine Trombly who were employed for a 37-hour work week by the defendants fall within one of the recognized exemptions of the Act so that defendants are not required, as plaintiff contends, to pay them additional wages.

2. Sections 6, 29 U.S.C. § 206, and 7, 29 U.S.C. § 207, above referred to are, respectively, the minimum wage and overtime provisions of the Fair Labor Standards Act.

3. While not binding on the Court, these regulations are entitled to great weight. *Marshall v.*

Section 13(a)(1) of the Act, 29 U.S.C. 213(a)(1), provides in pertinent part

The provisions of Sections 206 and 207 of this Title shall not apply with respect to—

any employee employed . . . in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary subject to the provisions of the Administrative Procedure Act . . .)[2]

The regulations promulgated by the plaintiff[3] provide a definition of "outside salesman" as meaning any employee

(a) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in:

(1) Making sales within the meaning of Section 3(k) of the act, or

(2) Obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(b) Whose hours of work of a nature other than that described in paragraph (a)(1) or (2) of this Section do not exceed 20 percent of the hours worked in the work week by non-exempt employees of the employer: *Provided,* That work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall not be regarded as non-exempt work.

29 CFR 541.5.

The evidence presented was to the effect that the three employees who are the focus of this litigation were each employed as real estate persons and were paid solely on a commission of gross sales price without receiving either a salary or a draw against commission. Each of them was required,

*Dallas Independent School District,* 605 F.2d 191, 195 (5th Cir. 1979); *Pearce v. Wichita County, City of Wichita Falls, Texas, Hospital Board,* 590 F.2d 128, 133 n.7 (5th Cir. 1979); *Usery v. Yates,* 565 F.2d 93, 97 (6th Cir. 1977).

however, to perform "floor" or "desk" work on the employer's principal business premises in shifts of at least four hours. Specifically, each of them would take a turn at answering the employer's telephone from 9 a. m. to 1 p. m. or 1 p. m. to 5 p. m. on Mondays through Fridays, and from 9 a. m. to 3 p. m. on Saturdays. Accordingly, they made out a schedule, Plaintiff's Exhibit 1, whereby for each week, one employee would be so engaged for eighteen hours, one for sixteen hours, and one for twelve hours with the schedule being rotated each succeeding week to ensure equality of time spent in such work.

Defendants' controller, Richard Sampson, and vice president in charge of sales, June Barry, testified to the effect that much of the work the real estate sales persons performed in conjunction with answering this telephone dealt with the real estate sales in which they were respectively engaged, and these witnesses therefore urged that the hours spent by the employees in answering the telephone did not exceed twenty percent of the hours worked in the work week by non-exempt employees of the defendants. This evidence will not withstand analysis.

Sampson was not employed in his present position at the commencement of the period with which we are engaged but he was present when the plaintiff commenced its investigation herein. Although no pre-investigation records had been kept by defendants as to the categories of calls received by the real estate sales person, Sampson caused such survey to be made over a three week period from February 23 through March 13, 1979. Ostensibly the employees who recorded the categories of calls were not advised of the purpose thereof and Sampson contended that for the first week, February 23–28, 1979, 90 out of 194 calls dealt with real estate rather than with defendant's construction or other activities; that for the period March 1–7, 1979, 61 out of 153 calls concerned real estate matters;

and that for the final week of March 8 through 13, 63 out of 127 calls were concerned solely with real estate. Sequentially the percentages therefore for this trial period would be 46 percent, 40 percent and 50 percent of telephone calls dealing with real estate or an average of 45.3 percent.

However, even were the Court to give substantial weight to this survey it is to be considered in the light that the exemption here relied upon must refer to the work of the specific employee involved and not to work of the general type in which that specific employee is engaged. 29 CFR 541.-503 provides

Work performed "incidental to and in conjunction with the employee's own outside sales or solicitation" includes not only incidental deliveries and collections which are specifically mentioned in Section 541.5(b) but also any *other work performed by the employee in furthering his own sales efforts.* Work performed incidental to and in conjunction with the employee's own outside sales or solicitations would include, among other things, the writing of his sales reports, the revision of his own catalog, the planning of his itinerary and attendance at sales conferences. (emphasis supplied)

Mrs. June Barry, the sales manager of defendants, testified that telephone duty was actually of benefit to the real estate sales person. While at the desk they were in a position to type up the multiple listing sheets necessary for their records, to telephone their own respective customers, and to talk to "walk in" or "call in" customers who were interested in purchasing real estate. Because of the substantial number of calls related to real estate purchases Mrs. Barry was of the opinion that it was necessary to have the telephone answered by someone who had experience in real estate sales.[4]

However, Mrs. Barry also testified that at least once a week there was a sales meeting which could last up to one and

4. With certain exceptions not here applicable, those who sell real estate in New Hampshire are required by statute to be licensed to do so.

RSA 331–A. The evidence in the instant case is that Mrs. Machamer, Mrs. Raabe, and Mrs. Trombly were all so licensed.

one-half hours in the morning and during that time the telephone would be answered by her assistant or some secretary neither of whom had real estate training nor licensing. Additionally the real estate sales agent who had the afternoon shift would generally receive from the answering service any calls placed to the defendants' number [5] after 5 p. m.

Mrs. Raabe and Mrs. Machamer testified that approximately 80 percent of the telephone calls received at the defendant's place of business were for items other than real estate, i. e. most of such calls dealt with the construction business.[6] Some callers were interested in employment with the construction end of the business while others had complaints as to leaking roofs, jammed doors and things of that nature resulting from the construction of their homes. Such calls would be referred by the real estate sales person to other parties involved in the construction end of the business.[7] Of the remaining 20 percent of calls received which might deal with real estate sales, no more than 10 percent would deal with the individual sales of each sales agent who happened to be answering the phone at that time. Accordingly messages would have to be left for the sales agent actually involved or attempts made to trace them down so that the caller could talk with them. Mrs. Machamer said that her attempts to do such things as type, talk to her own customers and advance her own sales efforts were hampered by the constant flow of calls which required her to refer same to those involved in the subject thereof. Additionally, the evidence of the sales employees was to the effect that very few walk-ins resulted in individual sales for them and most of their success arose from efforts which they were able to perform when not engaged in answering the defendants' telephone.

5. Sampson testified that the corporate defendant had one telephone number although there were five incoming lines which would ring sequentially when that number was dialed.

6. The corporate defendant is engaged in the construction of custom homes, that is, homes built to a client's specifications, and also builds houses for speculation in the hopes that a customer would subsequently purchase same.

The law is clear that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense upon which the employer has the burden of proof. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–7, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Idaho Metal Works v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Mitchell v. Kentucky Finance Company*, 359 U.S. 290, 295, 79 S.Ct. 756, 759, 3 L.Ed.2d 815 (1959); *Walling v. General Industries Company*, 330 U.S. 545, 547–548, 67 S.Ct. 883, 884, 91 L.Ed.2d 1088 (1947); *A. H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). Such exemptions are to be narrowly construed against the employer with their application to be limited to those who come plainly and unmistakably within their terms and spirit. *Marshall v. Woods Hole Oceanographic Institute*, 458 F.Supp. 709, 719 (D.Mass.1978).

Here, it is clear that the real estate agents spent more than 20 percent of their 37-hour average work week performing non-exempt work, 29 CFR 541.5, 541.507, as such telephone calls as they received, even those dealing with real estate, did not concern matters which were incidental to or in conjunction with their own individual sales efforts and they could not reasonably expect any compensation to result from such activity. As the primary duty of sales agents is selling, and the primary duty of those who answer telephones is answering telephones, it is clear that the defendants here have failed to sustain their burden of proof that Mrs. Machamer, Mrs. Raabe, and Mrs. Trombly come within the exemption of "outside salesmen".

The evidence was to the effect that Cheney himself is engaged 90 percent of the time in these construction efforts rather than in the real estate sales end of the business.

7. Although Mrs. Trombly herself did not testify, both Mrs. Machamer and Mrs. Raabe testified that their observation was to the effect that her experience was the same as theirs.

The parties having stipulated as to the amounts to be awarded in the event, as here found, that the employees are not within the exemption, it is accordingly ordered that payment with interest thereon is to be made to the employees as follows: Abby Machamer for the period July 29, 1978 to February 17, 1979, $2,419.45; Janis Raabe for the period January 28, 1978 to February 17, 1979, $4,378.95; Christine Trombly for the period October 29, 1977 to February 17, 1979, $3,177.55.

The defendants, their agents, servants, employees and those persons in active concert or participation with them or acting in their interest and behalf, are herewith further enjoined from violating the provisions of Sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act by assigning real estate sales persons to duty answering the telephone as hereinabove outlined.

The foregoing shall comprise the findings and rulings of the Court pursuant to Rule 52, Federal Rules of Civil Procedure. All requests for findings and rulings filed by defendants which are not inferentially hereinabove granted are denied.[8]

SO ORDERED.

---

8. Defendants' stress upon its accounting code (04) and its insurance code (8742) for outside salesmen is misplaced. The mere fact that defendants so categorized the employees here at issue does not serve to fulfill the requirements of the statute and regulation relative to the exemption at issue.