**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0518-19

JAMES KENNEDY, II, on
behalf of himself and those
similarly situated persons,

     Plaintiff-Respondent,

v.

WEICHERT CO. d/b/a
WEICHERT REALTORS,

     Defendant-Appellant.

_____

Argued March 23, 2020 – Decided July 2, 2021

Before Judges Messano, Ostrer and Susswein.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2266-19.

John F. Birmingham (Laddey, Clark & Ryan, LLP) of the Michigan bar, admitted pro hac vice, and Jennifer M. Keas (Foley & Lardner, LLP) of the District of Columbia bar, admitted pro hac vice, argued the cause for appellant (Laddey, Clark & Ryan, LLP, Foley & Lardner, LLP and Jennifer M. Keas, attorneys; Thomas

N. Ryan, John F. Birmingham and Jennifer M. Keas, on the briefs).

Ravi Sattiraju argued the cause for respondent (Sattiraju & Tharney, LLP, attorneys; Ravi Sattiraju, of counsel and on the briefs; Anthony S. Almeida, on the briefs).

Darren C. Barreiro argued the cause for amicus curiae New Jersey Realtors® (Greenbaum Rowe Smith & Davis LLP, attorneys; Barry S. Goodman and Darren C. Barreiro, of counsel; Darren C. Barreiro and Conor J. Hennessey, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Are commissioned real estate salespersons exempt from the Wage Payment Law (WPL)? That is the issue in this appeal on leave granted.

James Kennedy, II, was a commissioned salesperson with Weichert Company, a licensed real estate broker. Kennedy alleges, for himself and a putative class, that Weichert violated the WPL's limitation on wage withholdings or diversions, N.J.S.A. 34:11-4.4, by deducting marketing, insurance and other expenses from his wages. In its dismissal motion, Weichert argued that fully commissioned real estate salespersons are independent contractors, whom the WPL does not cover. See N.J.S.A. 34:11-4.1. The trial court denied the motion after declaring that the "ABC test" under the

A-0518-19

Unemployment Compensation Law (UCL), N.J.S.A. 43:21-19(i)(6)(A), (B), and (C), determines a real estate salesperson's status as an independent contractor under the WPL.  In so doing, the trial court followed the Supreme Court's holding in Hargrove v. Sleepy's, LLC, 220 N.J. 289 (2015).  There, responding to a certified question from the Third Circuit, the Court held "that the 'ABC' test . . . governs whether a plaintiff is an employee or independent contractor for purposes of resolving a wage-payment or wage-and-hour claim."  Id. at 295.

Although Hargrove involved a truck driver's WPL claim, the Court's broad statement was unqualified.  But Weichert contends the Court's holding does not reach real estate salespersons.  Weichert argues that the ABC test does not apply to real estate salespersons because the UCL expressly excludes them from coverage.  Also, Weichert contends that the Real Estate Brokers and Salesmen Act (Brokers Act) recognizes real estate salespersons' independent-contractor status, while requiring relationships inconsistent with the ABC test.

We affirm as modified the trial court's order denying Weichert's motion to dismiss.

I.

We assume the facts in Kennedy's complaint.  See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005) (stating that, on a motion to dismiss for

failure to state a claim, a court must assume a plaintiff's factual assertions and extend to the plaintiff all favorable factual inferences). Kennedy contracted to be a real estate salesperson for Weichert between August 8, 2012 and November 6, 2018.[1] Weichert classified Kennedy as an independent contractor. It did the same for the putative class of other real estate salespersons it contracted with since March 25, 2013.

Nonetheless, Weichert "exercised a significant level of control and direction" over Kennedy's and the class's work. Weichert required Kennedy to work under its supervision and in its facilities. Kennedy could not charge customers less than the sales commission Weichert set, but Weichert could change the commission structure at will, and modify a marketing fee. Weichert could withhold some of its listings from Kennedy, but Kennedy had to "introduce" all his customers to real-estate related services that Weichert sold. Kennedy could not work for other brokers while he worked for Weichert. He had to join real estate organizations that Weichert belonged to, and he had to pay the fees for doing so. Even if Weichert terminated him, which it retained the right to do at will, all of Kennedy's prospects belonged to Weichert and

---

[1] Kennedy did not attach the contract to his complaint and Weichert did not submit it in support of its motion.

Kennedy retained no right to compensation from transactions with them after he left. Kennedy had to name Weichert as a co-insured on his automobile insurance policy, but Weichert retained the right to control any litigation or dispute.

Relevant to his WPL claims, Kennedy alleged that Weichert compensated him on a strictly commission basis, but it "made, took and/or required" at least eighteen forms of "deductions" from his and the class's wages. The complaint does not clearly say that Weichert subtracted these expenses from his commissions, rather than "required" him to pay the expenses after he received his commissions. The listed deductions include marketing fees, MLS fees for listings and membership, and costs and expenses for collections and marketing. The required payments included trade association dues, mail and travel costs, and health and errors and omissions insurance. He also had to pay for his business cards. Kennedy alleged these deductions unlawfully decreased his and the class's wages that the WPL entitled them to receive.

## II.

In lieu of an answer, Weichert moved to dismiss for failure to state a claim because Kennedy, as a matter of law, was not an employee under the WPL. Alternatively, Weichert asked the court to declare that the ABC test did not apply, and that Weichert's and Kennedy's independent contractor agreement

5

defined their relationship under the Brokers Act. Alternatively, Weichert asked the court to apply "the traditional control test or the hybrid test" that the Court applied to worker's compensation cases in Estate of Kotsovska, ex rel. Kotsovska v. Liebman, 221 N.J. 568 (2015).[2]

The trial judge declined Weichert's invitation to distinguish Hargrove. The judge noted that the Court adopted the ABC test for WPL employee-vs-independent-contractor questions without addressing those workers the UCL exempts. The court's order denied the motion to dismiss and declared that the ABC test governed. Thereafter, we granted Weichert's motion for leave to appeal.

III.

A.

Since 1899, New Jersey law has protected employees' right to timely payment of cash wages. See L. 1899, c. 38, § 1, formerly codified at N.J.S.A. 34:11-4, repealed by L. 1965, c. 173, § 13. The law entitled employees to wage payment in "lawful money of the United States" every two weeks; it declared

---

[2] The New Jersey Realtors unsuccessfully moved to intervene. We affirmed the trial court's order denying intervention, and sua sponte granted the organization leave to participate as amicus curiae and present argument, which it did. See Kennedy v. Weichert, No. A-0395-19 (App. Div. Feb. 21, 2020).

A-0518-19

null and void agreements to the contrary; and imposed penalties for violations. L. 1899, c. 38, §§ 1, 2.

The law was originally designed to combat "the practice prevalent among factory owners, particularly by owners of glass factories in southern New Jersey, of paying wages in the form of order books or scrip, redeemable only at company-owned stores." Dep't of Labor & Indus. v. Rosen, 44 N.J. Super. 42, 45 (App. Div. 1957). More generally, the statute furthered the "economic and social necessity" of assuring "payment in cash at regular intervals of wages upon which an employee" and the employee's family depend for support. Id. at 46. The statute penalized employers who did not pay workers their earned wages, even if the employer simply lacked the money to do so. Id. at 49-50. The law excluded agricultural workers and "watermen," but did not mention independent contractors. L. 1899, c. 38; N.J.S.A. 34:11-4 (repealed 1965).[3]

---

[3] Over forty states have some form of wage payment law to vindicate workers' rights to their wages. See S. Samaro, The Case for Fiduciary Duty as a Restraint on Employer Opportunism Under Sales Commission Agreements, 8 U. Pa. J. Lab. & Emp. L. 441, 446 (2006); see, e.g., State ex rel. Nilsen v. Or. State Motor Ass'n, 432 P.2d 512, 515 (Or. 1967) (stating that policy of wage payment law "is to aid an employe[e] in the prompt collection of compensation due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employee from promptly collecting his agreed compensation" and noting that "[t]he smaller the amount of the unpaid compensation the greater is the need for assistance in effecting collection").

In 1965, the Legislature modernized the wage payment law, and for the first time, defined "employee" to mean "any person suffered or permitted to work by an employer, except that independent contractors and subcontractors, shall not be considered employees." L. 1965, c. 173, § 1, codified at N.J.S.A. 34:11-4.1.[4] The law expressly includes commissions as a form of wages. See N.J.S.A. 34:11-4.1(c); Minoia v. Kushner, 365 N.J. Super. 304, 310 (App. Div. 2004).

Pertinent to Kennedy's claim, the law states that "[n]o employer may withhold or divert any portion of an employee's wages unless" expressly permitted by the WPL or by other laws. N.J.S.A. 34:11-4.4. For example, the law expressly permits withholdings or diversions for retirement, health, and profit-sharing plans, N.J.S.A. 34:11-4.4(b)(1); savings plans, N.J.S.A. 34:11-4.4(b)(3); repayment of employee loans, N.J.S.A. 34:11-4.4(b)(4); and approved charitable contributions, N.J.S.A. 34:11-4.4(b)(5). The law permits few withholdings or diversions directly related to an employee's work performance, but it does permit them for "safety equipment," N.J.S.A. 34:11-4.4(b)(4) and for

---

[4] The new law removed the exclusion of agricultural workers and watermen, but did not disturb a provision that, at the time, required bi-monthly wage payments to railroad employees, L. 1911 c. 371, amended by L. 1974 c. 172, and permitted monthly payment of wages to "bona fide executive, supervisory and other special classifications of employees," N.J.S.A. 34:11-4.2.

the rental and cleaning of work clothing, if authorized in advance by the employees or their collective bargaining agreement, N.J.S.A. 34:11-4.4(b)(6). The law also allows the Commissioner of Labor and Workforce Development to authorize by regulation other "contributions, deductions and payments" if approved by the employer. N.J.S.A. 34:11-4.4(b)(11).

The WPL's public policy goal remained unchanged: "to protect employees' wages and to guarantee receipt of the fruits of their labor." Rosen v. Smith Barney, Inc., 393 N.J. Super. 578, 585 (App. Div. 2007), aff'd, 195 N.J. 423 (2008).

B.

We do not write on a clean slate in deciding if Kennedy, a fully commissioned real estate salesperson, is an employee or an independent contractor under the WPL. As we noted at the outset, the Supreme Court broadly declared that the ABC test determines if a person is an employee or an independent contractor under the WPL. Hargrove, 220 N.J. at 295.

To satisfy the ABC test, a person must demonstrate:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

[N.J.S.A. 43:21-19(i)(6)(A),(B),(C); see also Hargrove, 220 N.J. at 305.]

The Court applied the same test to the employee-status question under the Wage and Hour Law (WHL), which sets a minimum wage and limits hours of work. Id. at 312. Like the WPL, the WHL refers to suffering or permitting work in defining employ or employee, see N.J.S.A. 34:11-56a1(f) (stating "'[e]mploy'" includes to suffer or permit to work") and N.J.S.A. 34:11-56a1(h) (stating "'[e]mployee' includes any individual employed by an employer"). Although the WHL does not expressly exclude independent contractors, it has been interpreted to do so. See Hargrove, 220 N.J. at 304 (noting that the WHL "does not prescribe the minimum wage or overtime rate payable to independent contractors"). The Court reasoned that the same test should apply to both statutes because they both "address the most fundamental terms of the employment relationship," and "[s]tatutes addressing similar concerns should resolve similar issues . . . by the same standard." Id. at 313. The Court

10

noted that "[t]he WPL is designed to protect an employee's wages and to assure timely and predictable payment" and the "WHL is designed to protect employees from unfair wages and excessive hours" by "establish[ing] a minimum wage for employees and the overtime rate for each hour of work in excess of forty hours in any week." Ibid.

In deciding to apply the ABC test to the WPL and WHL, the Court deferred to the view of the agency that enforces both laws. Id. at 312 (concluding "that no good reason has been presented to depart from the standard adopted by the DOL"). In 1995, the Department of Labor expressly incorporated the ABC test in its WHL regulations. 27 N.J.R. 3958 (Oct. 16, 1995); N.J.A.C. 12:56.16.1 (stating "[t]he criteria identified in the Unemployment Compensation Law at N.J.S.A. 43:21-19(i)(6)(A)(B)(C) and interpreting case law will be used to determine whether an individual is an employee or independent contractor for purposes of the Wage and Hour Law").

The department did not adopt a comparable provision in its WPL regulation, N.J.A.C. 12:55-1.2, which simply tracks the WPL's statutory definition. But, in its comments adopting the WHL regulation, the department said it "feels that it is necessary to include reference to this criteria [that is, the ABC test] in the Wage and Hour rules since an individual's employment status

11

impacts determinations concerning entitlements under the minimum wage, overtime, <u>wage payment and wage collection</u> statutes." 27 N.J.R. 3958 (emphasis added); <u>see also</u> <u>Hargrove</u>, 220 N.J. at 303 (citing this regulatory history). As amicus curiae in <u>Hargrove</u>, the department also informed the Court that it "applied the 'ABC' test for independent contractor determinations under the WPL as well." <u>Ibid.</u> For example, the agency did so in <u>New Jersey Department of Labor and Workforce Development v. SG America, Inc.</u>, 2011 N.J. AGEN LEXIS 67 (Mar. 18, 2011), where it affirmed penalties for WPL as well as WHL violations after applying the ABC test to determine that a garment worker was an employee and not an independent contractor.

In its 1995 rulemaking, the department initially proposed the "economic realities" test that federal courts apply to determine independent-contractor status under the Federal Fair Labor Standards Act (FLSA):

> 1. The degree of the alleged employer's right to control the manner in which the work is performed;
> 2. The alleged employee's opportunity for profit or loss depending upon the managerial skill;
> 3. The alleged employee's investment in equipment or materials required for his or her task, or his or her employment of helpers;
> 4. Whether the service rendered requires a special skill;
> 5. The degree of permanence of the working relationship; and

6.     Whether the service rendered is an integral part of the alleged employer's business.

[27 N.J.R. 2871 (Aug. 7, 1995).]

See, e.g., Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1383-88 (3d Cir. 1985) (applying the six-factor "economic realities" test in FLSA case).

But the department ultimately opted to formally adopt the ABC test, even though the WHL's definitions mirror those in the FLSA, see 29 U.S.C. 203(g) (stating "'[e]mploy' includes to suffer or permit to work") and 29 U.S.C. 203(e)(1) (stating "'[e]mployee' means any individual employed by an employer").[5] Business interests objected to the FLSA standard because it "appear[ed] to expand the present 'ABC Test'" and might deny independent-contractor status to certain unskilled workers. 27 N.J.R. 3958 (Oct. 16, 1995).

The Hargrove Court likewise declined to adopt the FLSA test. The Court concluded that the New Jersey department's reliance on the ABC test, which requires that independent contractors satisfy all three factors A, B, and C,

---

[5] The United States Supreme Court has stated, regarding that definition, "A broader or more comprehensive coverage of employees within the stated categories would be difficult to frame." United States v. Rosenwasser, 323 U.S. 360, 362 (1945). The FLSA definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992). As noted, the WPL and WHL also use the suffer-or-permit language.

"operates to provide more predictability" than the FLSA multi-factor 'economic realities' standard" in which no single factor is determinative. Hargrove, 220 N.J. at 314. The Court opined that the WPL and WHL might overall cast a "wider net" using the ABC test. Ibid. The Court also noted that the department's approach "presumes that the claimant is an employee and imposes the burden to prove otherwise on the employer." Ibid.

### C.

Turning to the issue at hand, Weichert argues that, despite the Hargrove Court's broadly-worded holding, the ABC test does not control whether a fully commissioned real estate salesperson is an employee or independent contractor under the WPL.

At the outset, we reject Weichert's argument that the only Hargrove holding worthy of stare decisis treatment pertains to truck drivers. Without limitation, the Court "conclude[d] that the 'ABC' test . . . governs whether a plaintiff is an employee or independent contractor for purposes of resolving a wage-payment or wage-and-hour claim." Hargrove, 220 N.J. at 295. We need not decide if the Court's conclusion is dictum as applied to anyone but truck drivers. We are "bound by [the] Court's pronouncements, whether classified as dicta or not." State v. Dabas, 215 N.J. 114, 136-37 (2013). At the same time,

we remain free "to fill lacunae in the law," <u>Pannucci v. Edgewood Park Senior Hous. – Phase 1, LLC</u>, 465 N.J. Super. 403, 414 (App. Div. 2020) (quoting <u>A.N. ex rel. S.N. v. S.M. ex rel. S.M.</u>, 333 N.J. Super. 566, 579-80 (App. Div. 2000) (Kestin, J., concurring)). So, the question is whether the Court left any daylight between its declaration that the ABC test applies to WPL employee-status questions, and the issue presented here.

Weichert presents two principal reasons why the ABC test does not apply here, despite <u>Hargrove</u>'s ABC-test endorsement: first, the UCL, which includes the ABC test, exempts fully commissioned real estate salespersons; second, the ABC test is inconsistent with the Brokers Act's more specific provisions on real estate salespersons' status. We address these issues in turn.

1.

Weichert highlights that, unlike the truck drivers in <u>Hargrove</u>, real estate salespersons are expressly exempt from the UCL, regardless of the ABC test. <u>See</u> N.J.S.A. 43:21-19(i)(7)(K) (stating "the term 'employment' shall not include . . . [s]ervices performed by real estate salesmen or brokers who are compensated wholly on a commission basis"). Thus, Weichert contends, the <u>Hargrove</u> Court did not confront the issue whether it was appropriate to apply the UCL's ABC

test to a WPL employment status dispute involving persons whom the law expressly exempts without resort to the ABC test.[6]

We reject Weichert's (and amicus's) argument that real estate salespersons are exempt, as a matter of law, from the WPL, because they are exempt from the UCL. To decide if a worker is an employee under a statute or under a common law rule, a court must consider the statute's terms and purpose. "[I]n each setting-specific analysis, what matters most is that an individual's status be measured in the light of the purpose to be served by the applicable legislative program or social purpose to be served." D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 122 n.7 (2007). "An individual may be considered an employee for some purposes but an independent contractor for others." MacDougall v. Weichert, 144 N.J. 380, 388 (1996); see also Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 389 (App. Div. 2017) (Ostrer, J., concurring) (comparing various "employee" tests). Also, a court "must look beyond the label attached to [a] relationship" and consider its underlying features, to decide if it creates an employment or an independent-contractor relationship. D'Annunzio, 192 N.J. at 122.

---

[6] Weichert also contends there is no evidence that the department has ever actually applied the ABC test to determine if the WPL or WHL applies to real estate salespersons.

The Hargrove Court determined that, given the common employee-protection goals of the WPL and the WHL, the general test for independent contractors should be the same. Although the Court approved the department's use of the UCL's ABC test, the Court did not read the UCL in pari materia with those other two laws.

Furthermore, in specially treating real estate salespersons under the UCL, the Legislature did not alter the generally applicable independent contractor test. The Legislature evidently granted real estate brokers and salespersons an exemption not because the ABC test did not apply; but because it did.

The exemption's history is instructive. The exemption was modeled on one for insurance agents. Insurance agents were found not to meet the ABC test for independent-contractor status. See Superior Life, Health and Acc. Ins. Co. v. Bd. of Review, 127 N.J.L. 537, 539-40 (Sup. Ct. 1942). The Legislature then exempted wholly commissioned insurance agents "exclusive of industrial life insurance agents." See L. 1941, c. 385, codified at N.J.S.A. 43:21-19(i)(7)(J). The real estate exemption soon followed, with the drafters expressing the intent to place real estate brokers and salespersons "on the same par with insurance agents." Statement to A. 64 (L. 1946, c. 37).

Notably, neither exemption was unqualified. Real estate brokers and salespersons are exempt only if compensated wholly on a commission basis. The Legislature expressly withheld the insurance agent exemption from industrial life insurance agents, who typically were assigned territories to collect premiums from persons already insured. See Washington Nat'l Ins. Co. v. Bd. of Review, 137 N.J.L. 596, 597 (Sup. Ct. 1948). That distinction does not necessarily relate to the agents' respective degree of independence from the insurer paying the compensation.

We reject Weichert's argument that "[i]t would be a perverse result" if the UCL's ABC test rendered Kennedy an employee under the WPL, while the UCL exempts Kennedy from coverage. As noted, a person may be an employee under one statute and not another. Had the Legislature intended to exempt real estate salespersons from the WPL's reach, it could have said so. The Legislature obviously found good cause to exempt commissioned real estate salespersons from the UCL. Perhaps, the Legislature believed real estate salespersons should not qualify for unemployment compensation because of their control over when and where they work. At the same time, the Legislature evidently found no sound reason to deny real estate salespersons their right under the WPL to timely

payment of compensation they already have earned, without unauthorized withholdings or diversions.[7]

Notably, the UCL exempts twenty-five specific categories of workers from covered "employment." See N.J.S.A. 43:21-19(i)(7)(A) to (Z); Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 580-81 (1991) (noting exemptions). Exemptions from the minimum wage under the WHL include persons engaged in motor vehicle sales and "outside sales," N.J.S.A. 34:11-56a(4)(a), but the WHL does not expressly exempt commissioned real estate salespersons.[8] Outside salespersons, as well as individuals working in a "bona fide executive, administrative, professional" capacity are also exempt from overtime requirements. N.J.A.C. 12:56-7.1; see also N.J.S.A. 34:11-56a(4)(b)(1). Yet, the Legislature has included no industry-specific exemptions under the WPL (jettisoning the previous exemptions for agricultural workers

---

[7] If certain withholdings or diversions are essential to the common business model of brokers and real estate salespersons, the Legislature could specifically authorize those deductions, rather than exempt real estate salespersons from the law's protections entirely.

[8] See Donovan v. Walter W. Cheney, Inc., 510 F. Supp. 748 (D.N.H. 1981) (holding that FLSA applied to wholly commissioned real estate salespersons who received no salary or draw against commission, but were required to perform "floor" work and spent more than twenty percent of their time on matters not related to their personal sales efforts, such as answering telephones); see also Luther v. Z. Wilson, Inc., 528 F. Supp. 1166 (S.D. Ohio 1981).

and watermen), placing only independent contractors and subcontractors entirely beyond its reach.

In sum, we conclude that the UCL's special treatment of commissioned real estate salespersons does not render the ABC test inappropriate to determine a real estate salesperson's independent-contractor status under the WPL.

2.

We next turn to Weichert's contention that applying the ABC test in this case is inconsistent with the Brokers Act, which defines aspects of the relationship between brokers and licensed salespersons. We generally reject Weichert's contention, because any inconsistency only arises on and after August 10, 2018, the effective date of amendments to the Brokers Act. L. 2018, c. 71, § 29.

The Supreme Court in Re/Max of New Jersey, Inc. v. Wausau Insurance Cos. held that the Brokers Act "define[d] a real estate agent or salesperson as an employee of the broker" and established an "employer-employee relationship" between a salesperson and a broker. 162 N.J. 282, 287-88 (2000). The Court noted that the Brokers Act at the time "provide[d] that a real estate agent or salesperson is one 'who, for compensation, valuable consideration or commission, or other things of value, . . . is employed by and operates under the

supervision of a licensed real estate broker . . . .'"  Ibid. (quoting N.J.S.A. 45:15-3 (1993)).  Throughout the Brokers Act, the relationship between a broker and a licensed salesperson was described as an employment relationship. For example, real estate brokers are required to prominently display the license certification of "all licensed persons in his employ."  N.J.S.A. 45:15-12.  "All licenses issued to . . . salespersons shall be kept by the broker by whom such real estate licensee is employed" and "[w]hen any real estate licensee is terminated or resigns his employment with the real estate broker by whom he was employed at the time of the issuing of such license to him, notice of the termination shall be given in writing."  N.J.S.A. 45:15-14 (1993).  Also, upon termination "such employer" shall notify the Real Estate Commission.  Ibid. And, if a broker loses his or her license, that automatically suspends "every real estate . . . salesperson's license granted to employees of the broker."  N.J.S.A. 45:15-15 (1996).

The question in Re/Max was whether the real estate salespersons were employees under the Workers' Compensation Act.  The trial court held that they were, under both the "control test" and the "relative nature of the work test." Re/Max of New Jersey, Inc. v. Wausau Ins. Cos., 304 N.J. Super. 59, 65-69 (Ch. Div. 1997).  We affirmed for the reasons stated, highlighting the court's use of

the "relative nature of the work test." Re/Max of New Jersey, Inc. v. Wausau Ins. Cos., 316 N.J. Super. 514, 516 (App. Div. 1998). The Supreme Court affirmed on the basis of the trial court's opinion. Re/Max, 162 N.J. at 286. The Court held that Re/Max agents were employees, despite the broker's "sophisticated attempt to thwart the employer-employee relationship established as a matter of public policy under the Brokers Act and the implementation of the Workers' Compensation Act." Id. at 288.

We recognize the case addressed salespersons' status under the Workers' Compensation Act, and not the WPL. However, Weichert has presented no policy inherent in the Workers Compensation Act and the WPL for affording a salesperson workers compensation if he or she, say, tripped and broke an ankle on the job, but uniformly denying that same salesperson the right under the WPL to prompt payment of his or her compensation without unauthorized withholdings or diversions. Furthermore, the Hargrove Court later determined the ABC test, which casts a wider net than other tests, should apply to WPL employee-status questions.

However, eighteen years after the Court's holding in Re/Max, the Legislature extensively amended the Brokers Act to expressly authorize independent contractor relationships between brokers and salespersons. The

2018 statute included a provision expressly stating that "[n]otwithstanding any provision of R.S.45:15-1 et seq. [the Brokers Act] or any other law, rule, or regulation to the contrary, a business affiliation between a broker and a broker-salesperson or salesperson may be that of an employment relationship or the provision of services by an independent contractor." L. 2018, c. 71, § 3(b), codified at N.J.S.A. 45:15-3.2(b). The amendments required that every salesperson enter into a written agreement with his or her broker before starting work, L. 2018, c. 71, § 3(a), codified at N.J.S.A. 45:15-3.2(a), and "[t]he nature of the business affiliation shall be defined in the written agreement," L. 2018, c. 71, § 3(b), codified at N.J.S.A. 45:15-3.2(b). The amendments also added the words "or contracted" almost everywhere the word "employed" was found in the act, and added "or contractors" after the word "employees." See L. 2018, c. 71.[9]

The Brokers Act amendments may affect the application of a test for determining a real estate salesperson's employment status under the WPL. The amendments not only authorized independent contractor relationships; they did so, "[n]otwithstanding . . . any other law, rule, or regulation to the contrary" and

_____

[9] The change was not made everywhere. For example, the Brokers Act still states that a broker's office shall prominently display "the license certificate of . . . all licensed persons in his employ," N.J.S.A. 45:15-12, without mentioning those "contracted."

23                                                                         A-0518-19

"[n]otwithstanding any provision" of the Brokers Act to the contrary. Based on the 2018 statute's plain language, the Legislature evidently concluded that an independent contractor relationship could subsist, even though a broker exercised the extensive controls over his or her salespersons that the Brokers Act required.

In other words, it would be inconsistent with the intent of the 2018 statute to apply an employment status test in such a way that it would deny independent-contractor status solely on the basis of compliance with Brokers Act requirements. For example, a real estate salesperson may receive commissions only through his or her broker. N.J.S.A. 45:15-16. A salesperson may not sue anyone for a commission other than his or her broker. N.J.S.A. 45:15-3. A salesperson's license shall be kept by his or her brokers, and upon termination or resignation, the salesperson lacks authority to earn commissions until licensed by the Commission through another broker. N.J.S.A. 45:15-14. These provisions, which require salespersons to submit to the control of his or her broker, should not preclude a salesperson's independent-contractor status. Cf. Laurel Sports Activities v. Unemployment Comp. Comm'n, 135 N.J.L. 234, 237 (Sup. Ct. 1947) (finding various wrestling and boxing participants were free of control of wrestling and boxing promoter because "[t]he details of employment

and control over the referees, timekeepers, announcers, boxers and wrestlers are so completely exercised by the State that the promoter has no control or direction whatever, save as noted").

However, we are unpersuaded by Weichert's argument that the 2018 amendments were curative and therefore retroactive. Curative amendments are retroactive because they are "designed merely to carry out or explain the intent of the original statute," or "remedy a perceived imperfection in or misapplication of" the statute. Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 388 (2016) (quoting Nelson v. Bd. of Educ. of Twp. of Old Bridge, 148 N.J. 358, 370 (1997)); see also Pisack v. B&C Towing, Inc., 240 N.J. 360, 371 (2020). A curative amendment must not change the original law's meaning. James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 564 (2014).

We doubt the Legislature intended the 2018 amendments to be curative and retroactive. There are three reasons. First, there is the statute's effective date provision. The Governor approved the Brokers Act amendments on August 10, 2018. The statute expressly provided that all the amendments were retroactive to January 1, 2018 except section 3, authorizing independent contractor and employee relationships "notwithstanding . . . any other law, rule, or regulation to the contrary." That section was effective only upon enactment.

25

L. 2018, c. 71, § 29.  Had the Legislature intended section 3 to apply retroactively, it presumably would not have made it effective eight months after the rest of the 2018 amendments.

Second, there is the matter of timing.  The Re/Max Court declared in 2000 that the Brokers Act established an employer-employee relationship.  The Legislature amended the Brokers Act in 2009 without altering the provisions on the employee-status issue.  See L. 2009, c. 238.  Rather, the 2009 statute created a new licensee – real estate referral agents – and provided that they, like other licensees, are "employed by . . . a licensed real estate broker."  L. 2009, c. 238, § 2.  Another nine years later, the Legislature altered the provisions defining the relationship between salespersons and brokers.

We appreciate that "[l]egislative inaction" can sometimes be a "weak reed . . . upon which to rely."  Masse v. Bd. of. Trs., Pub. Emps. Ret. Sys., 87 N.J. 252, 264 (1981) (quoting 2A Sutherland, Statutory Construction, § 49.10 (4th ed. 1973)).  But we cite the inaction not to infer the Legislature approved of the Re/Max interpretation.  Cf. Ibid. (rejecting inaction as a sign of approval).  We cite the inaction to reject the inference that the Legislature not only disapproved it, but intended to cure it retroactively, and it just took eighteen years and a second amendatory statute for the Legislature to get around to the task.

Third, in the accompanying bill and committee statements, the Legislature did not express an intent to clarify the law or correct a misapplication of it. Cf. Nelson, 148 N.J. at 370 (noting legislative history expressing intent to clarify and correct misapplication of statute and provision that the amendment would apply to persons who previously acquired rights under the earlier statute). Rather, the Legislature expressed its intent to codify certain recent Real Estate Commission regulations authorizing independent contractor agreements.

> [T]he bill codifies two existing provisions of regulations promulgated by the New Jersey Real Estate Commission. First, the bill mandates that two hours of continuing education courses be taken in the topic of ethics. Second, the bill requires a written agreement defining the business affiliation between a broker and a broker-salesperson or salesperson and the terms under which the services of the broker-salesperson or salesperson have been retained by the broker. The bill provides that the business affiliation between a broker and a broker-salesperson or salesperson may be that of an employment relationship or independent contractor relationship.
>
> [Sponsor's Statement to S. 430 (L. 2018, c. 71).]

The Real Estate Commission had adopted regulations effective July 3, 2017 redacting references to employment in its regulation governing broker-salespersons agreements, and stating that it "interprets 'employment agreement,' 'employ,' and 'employing broker'" in [the Brokers Act] "to permit an employment

27

relationship or an independent contractor relationship between a broker and a broker-salesperson, salesperson, or referral agent." See N.J.A.C. 11:5-4.1(j); 49 N.J.R. 1910(a) (July 3, 2017). In its rule proposal, the Commission stated that "[h]istorical practice as well as current practice indicates that licensees determine the nature of their business relationship." 48 N.J.R. 1900(a) (Sep. 19, 2016).

However, the Commission was not empowered to overturn the Re/Max Court's interpretation that the Brokers Act "defines a real estate agent or salesperson as an employee of the broker," 162 N.J. at 287, and "established as a matter of public policy" an "employer-employee relationship," id. at 288.[10] Nor was the Commission empowered to limit the reach of another statute, such as the WPL, that depends on determining a person's employment status. As we have noted, a person may be an employee under one statute and not another. See

_____

[10] We recognize that the United States Supreme Court has held, as a corollary to its Chevron doctrine, see Chevron, U.S.A. v. NRDC, 467 U.S. 837 (1984), that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005). Even if our Court were to adopt this rule because it "has applied a Chevron-like deference" to state agencies' statutory interpretation, see In re RCN of NY, 186 N.J. 83, 93 (2006), the rule does not apply here. The Re/Max court identified no ambiguity in the Brokers Act and, on its face, there was none.

MacDougall, 144 N.J. at 388. And, the Department of Labor and Workforce Development, not the Real Estate Commission, exercises the responsibility to enforce and administer the WPL, N.J.S.A. 34:11-4.9, and to promulgate implementing regulations, N.J.S.A. 34:11-4.11. Therefore, the department, not the commission, is owed deference in interpreting the meaning of "independent contractor" under the WPL. See Hargrove, 220 N.J. at 301-02.

In sum, the Brokers Act amendments are prospective in effect. Consequently, at most, they can have only a minor impact on the dispute before us. Section 3 of the 2018 statute became effective August 10, 2018, and Kennedy seeks damages for the period between August 8, 2012 and November 6, 2018. So, the Brokers Act amendments would apply only to the last three months or so of Kennedy's relationship with defendant.

With the slim record before us, we decline to declare the amendments' impact on Kennedy's and the putative class's allegations for that brief period. We also decline to endorse the trial court's declaration that the ABC test governed Kennedy's employment-status for the period after August 10, 2018. Rather, determining the appropriate test and defining the parties' post-August 10, 2018 relationship should await development of a full factual record. Neither

29

party presented their contract, or any amendments that may have been added over the years Kennedy worked for Weichert.

Although the Supreme Court declared we must "look beyond the label" to decide if someone is an employee or an independent contractor, D'Annunzio, 192 N.J. at 122, Weichert argues the 2018 amendment empowers parties to label their relationship however they want. But stating that parties' "business affiliation shall be defined in the written agreement," L. 2018, c. 71, § 3(b), codified at N.J.S.A. 45:15-3.2(b), may mean only that the written agreement shall specify the parties' respective rights and duties and those features shall define the relationship. We need not resolve this question either, both because the parties' contract is not before us, and it was, in any event, executed before the amendment's effective date.

IV.

In sum, we affirm the trial court's denial of Weichert's motion to dismiss. We conclude that the trial court correctly held that the ABC test is the appropriate one to determine whether Kennedy and the putative class were employees under the WPL for the period until August 9, 2018. For the period thereafter, the trial court should determine the appropriate test in light of a full factual record. Particularly at this early stage of the litigation, and in light of

30

the slim record before us, we express no opinion regarding whether plaintiffs will ultimately succeed under the ABC test for the period before August 10, 2018, or under the test that the court determines for the subsequent period.

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION